IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION

PETER GRELLE

    Plaintiff,

v.

OFFICE OF PERSONNEL MANAGEMENT
1900 E Street NW
Washington, DC 20415

ELON MUSK, in his official capacity,
c/o Executive Office of the President
1600 Pennsylvania Avenue, NW
Washington, DC 20530

    Defendants.

Case No.: 25-cv-00189-JB/KRS

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff Peter Grelle, proceeding pro se, brings this action against the Office of Personnel Management (OPM) and Elon Musk in his official capacity, seeking declaratory and injunctive relief for violations of federal law and constitutional due process arising from an unauthorized and coercive directive issued to federal employees.

### I. INTRODUCTION

1. This case seeks declaratory and injunctive relief to halt OPM's unlawful directive and Musk's coercive public statements threatening federal employees' continued employment, which have resulted in widespread disruption of federal operations, lowered morale, and

adversely affected critical government services—thereby significantly impacting the broader public interest.

2. The claims set forth herein address serious constitutional and statutory violations, including due process infringements, arbitrary and capricious administrative actions, and an Appointments Clause violation arising from the unauthorized exercise of substantial authority by an unelected official. Plaintiff further asserts that traditional administrative remedies have been rendered ineffective and that the contradictory nature of the directive precludes a fair and impartial administrative review.

## II. JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question jurisdiction), the Administrative Procedure Act (APA), 5 U.S.C. § 702 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2. Venue is appropriate pursuant to 28 U.S.C. § 1391(e), as Plaintiff resides within this judicial district and the harm occurred here.

## III. PARTIES

1. Plaintiff is a federal employee residing in ▮▮▮▮▮▮▮▮▮▮ employed in a non-probationary, career-status position with a legally protected interest in continued federal employment.

2. Defendant OPM is the federal agency responsible for federal employment policies.

3. Defendant Musk serves as Special Advisor to the Executive Office of the President, overseeing federal workforce performance initiatives. Musk's public communications are treated as authoritative directives by federal agencies.

## IV. FACTUAL BACKGROUND

1. On or about February 22, 2025, OPM issued an email directive requiring federal employees to submit weekly five-bullet-point summaries of their work activities. This directive bypasses established performance management systems and imposes an undue burden on employees by shifting control of performance evaluations from agency-specific processes to externally mandated metrics. As a federal supervisor, Plaintiff has lost meaningful authority over employee performance evaluations, which are now dictated by these external mandates rather than internally developed and tailored agency standards.

2. Federal employee unions immediately challenged the legitimacy of this OPM directive. OPM provided no explanation for how the information collected from the "five bullet" email would be used or under what authority it was being demanded, leaving employees in the dark as to the directive's purpose. The American Federation of Government Employees (AFGE), the largest federal employee union, swiftly condemned the email as illegitimate and beyond OPM's authority to unilaterally assign work to agency employees. AFGE noted that Musk's extraneous threat—his social media post warning that non-response would be treated as a resignation—had no legal basis and was not reflected in the official OPM communication.

3. In response, AFGE announced it would formally demand that OPM rescind the directive and disclose the legal authority for its issuance. AFGE advised federal employees to forward the email to their supervisors and await guidance rather than comply immediately, emphasizing that absent a direct order through proper agency channels, employees had no

obligation to respond. When no satisfactory justification was provided by OPM, AFGE—joined by other federal employee unions—filed suit in federal court to challenge the email directive's legality. Separately, at least one AFGE local (AFGE Local 17) filed a grievance alleging that OPM's mandate violated federal labor law and agency policies.

4. On February 23, 2025, Musk publicly stated on X (formerly Twitter): "Failure to respond will be taken as a resignation." On February 26, 2025, Musk further asserted that employees who complied would be "considered for promotions," thereby coercing compliance with OPM's directive.

5. Despite widespread confusion, fear, and anxiety among federal employees due to Musk's statements, neither OPM nor Musk issued a formal retraction, clarification, or correction directly to the affected employees. Furthermore, the directive has created significant uncertainty and stress among federal employees. Plaintiff, in particular, has been forced to reconsider his employment options and adjust financial decisions in anticipation of potential job loss. The policy disproportionately impacts probationary employees and disrupts established agency workflows, exacerbating administrative confusion and operational inefficiencies.

6. Plaintiff faces irreparable harm, including severe emotional distress, reputational damage, financial jeopardy, and the threat of wrongful termination resulting from the unlawful directive and Musk's coercive public statements.

7. Subsequent to the initial directive, on February 26, 2025, OPM and the Office of Management and Budget (OMB) issued joint guidance titled "Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative," directing agencies to prepare for large-scale reductions in force (RIFs) and reorganization plans by March 13, 2025.

8. On March 1, 2025, the Department of Defense (DoD), under the direction of Secretary Pete Hegseth, initially instructed its civilian workforce to pause responses to the OPM directive due to concerns over sensitive information. However, after reviewing procedures and consulting with OPM, the DoD mandated compliance, requiring employees to submit non-sensitive summaries of their weekly accomplishments. This reversal directly reinforces the coercive nature of the actions alleged in Counts II and IV, amplifying the procedural due process violations and improper employment threats.

9. On February 24, 2025, OPM issued further guidance reiterating that weekly reports are mandatory, with submissions due by Mondays at 11:59 p.m. EST. In addition to the directive itself, Defendant Elon Musk has continued to make public statements that unlawfully mischaracterize federal employee obligations and undermine due process protections. His comments contribute to a coercive work environment by threatening adverse employment consequences and creating a chilling effect among federal employees. These statements have directly harmed Plaintiff's professional reputation, undermined his employment stability, and eroded his supervisory authority.

10. Exhaustion of Administrative Remedies: Plaintiff asserts that traditional administrative avenues—such as appeals to the Merit Systems Protection Board (MSPB) or internal agency review—have been rendered ineffective due to an ongoing purge of oversight bodies and the dismantling of established internal review mechanisms. This lack of available administrative remedies leaves federal employees without a meaningful forum to contest these directives, thereby necessitating immediate judicial intervention.

11. Preclusion of Fair Administrative Review: The contradictory and ambiguous nature of the directive, coupled with the absence of any proper hearing or recourse, deprives

federal employees of a fair and impartial administrative review. This further compounds the due process violation and underscores the urgency of court intervention.

12. Impact on Agency Autonomy: The enforcement of the directive not only harms individual employees but also undermines the statutory authority and independence of agency heads. By compelling agencies to act in contravention of their independent authority under 5 U.S.C. §§ 302 and 3101, Defendants' actions disrupt the effective functioning of government operations—a matter of significant public interest.

13. Failure to Provide Required Notice-and-Comment Rulemaking: The directive was imposed without undergoing the mandated notice-and-comment process under 5 U.S.C. §§ 553 and 706(2)(D). This procedural deficiency violates statutory safeguards and demonstrates that the rule was enacted arbitrarily and without proper public input.

## V. ROADMAP AND SUMMARY OF CLAIMS

1. This complaint comprises multiple counts addressing distinct violations:

A. Count I asserts that Defendants' directive exceeds statutory authority and violates separation-of-powers principles.

B. Count II alleges that treating non-response as resignation constitutes constructive discharge, thereby violating Plaintiff's procedural due process rights.

C. Count III contends that the directive violates the Administrative Procedure Act by being arbitrary, capricious, and enacted without the requisite notice-and-comment rulemaking.

D. Count IV details the improper and coercive employment threats made by Musk and enforced by OPM.

E. Count V challenges the constitutional validity of Musk's appointment, asserting that his exercise of significant authority without Senate confirmation violates the Appointments Clause.

## VI. CLAIMS FOR RELIEF

### COUNT I: Violation of Statutory Authority and Separation of Powers

1. Plaintiff re-alleges and incorporates all previous allegations.

2. Defendants' directive is unconstitutional, ultra vires, arbitrary, and capricious. It exceeds the statutory authority provided in 5 U.S.C. §§ 7512–7513 (governing adverse employment actions), 5 U.S.C. § 1103(c) (limiting OPM's authority over other agencies' personnel decisions), and 5 U.S.C. § 3301 (vesting control over federal employment policies in the President and individual agency heads, not OPM). Furthermore, it contravenes 5 U.S.C. § 7106(a), which reserves management rights—including decisions regarding work assignments and personnel actions—to agency heads rather than to OPM or external directives.

3. This overreach was immediately recognized by federal labor representatives: AFGE's leadership denounced OPM's "five-bullet" email as an unauthorized assignment of work outside OPM's lawful purview. Defendants' actions also violate fundamental separation-of-powers principles by usurping Congress's exclusive power to define the terms and conditions of federal employment, as articulated in *INS v. Chadha*, 462 U.S. 919 (1983), and *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). Additionally, OPM's directive unlawfully overrides the statutory authority granted to individual agency heads under 5 U.S.C. §§ 302 and 3101 to manage their personnel independently, thereby disrupting agency autonomy.

### COUNT II: Procedural Due Process (Fifth Amendment)

1. Plaintiff re-alleges and incorporates all previous allegations.

2. Plaintiff has a constitutionally protected property interest in continued federal employment. Defendants' directive and coercive communications, by treating non-response as resignation, constitute a constructive discharge, thereby violating Plaintiff's procedural due process rights under *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Plaintiff received no meaningful notice or opportunity to respond before the potential deprivation of his property interest, effectively circumventing statutory and constitutional protections.

**COUNT III: Administrative Procedure Act Violations (5 U.S.C. § 706)**

1. Plaintiff re-alleges and incorporates all previous allegations.

2. Defendants violated the APA as follows:

A. Arbitrary and Capricious: The directive is arbitrary and capricious under 5 U.S.C. § 706(2)(A), lacking a rational basis because it unreasonably equates silence or delayed response with voluntary resignation—disregarding valid reasons for non-response such as illness, approved leave, or confusion caused by the conflicting communications. This policy has caused substantial disruption in agency operations and significantly damaged employee morale and productivity (see *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983)).

B. Exceeds Statutory Authority: The directive exceeds statutory authority under 5 U.S.C. § 706(2)(C), as OPM lacks any legal power to impose resignation conditions on employees of other agencies. It thus unlawfully overrides the authority that individual agency heads possess under 5 U.S.C. §§ 302 and 3101 to manage their own personnel.

C. Procedural Violation (No Notice-and-Comment): The directive violates APA procedural requirements, including 5 U.S.C. §§ 553 and 706(2)(D), by imposing a substantive

rule affecting tens of thousands of federal employees without undergoing the mandated notice-and-comment rulemaking process.

D. Denial of Public Participation: By bypassing the notice-and-comment process, Defendants deprived affected employees and the public of any opportunity to provide input, rendering the directive not only procedurally deficient but also substantively arbitrary and capricious.

### COUNT IV: Improper and Coercive Employment Threats

1. Plaintiff re-alleges and incorporates all previous allegations.

2. Defendant Musk, acting in his official capacity as a Presidential advisor, publicly asserted authority over federal workforce policies and explicitly threatened adverse employment consequences for noncompliance. His authority to make such pronouncements was never formally delegated by any statute, regulation, or executive order. Yet multiple federal agencies interpreted Musk's statements as binding policy directives, thereby amplifying the coercive effect of OPM's email directive.

3. Musk's public threats have significantly contributed to confusion, fear, and disruption among federal employees. The OPM directive itself circumvents established performance management systems, imposing an external, burdensome set of criteria that disrupts standard evaluative procedures within agencies. This improper delegation of evaluative authority undermines the independence of agency-specific performance metrics.

4. As a federal supervisor, Plaintiff has experienced a direct loss of control over employee performance evaluations, which are now dictated by externally imposed criteria rather than internally developed agency standards. This shift has altered professional dynamics within his agency and diminished Plaintiff's ability to manage and assess employee performance

1  effectively. The DoD's subsequent mandate of compliance (under threat of discipline) further
2  reinforced Musk's coercive communications. As recognized in *Speiser v. Randall*, 357 U.S. 513
3  (1958), and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), such government-induced
4  coercion in employment decisions constitutes irreparable harm and violates constitutional
5  protections. Additionally, the failure of OPM or the White House to provide any clarifying
6  guidance forced employees into compliance under duress, precluding a fair and impartial
7  administrative review. The directive's inherent uncertainty and the stress it generated have led
8  Plaintiff to seriously contemplate alternative employment, affecting his personal and financial
9  stability. The anticipation of potential job loss has also prompted changes in his financial
10 planning. The policy's disproportionate impact on probationary employees further disrupts
11 agency workflow, contributing to an environment of operational instability. In conjunction with
12 the above, Defendant Musk's public statements have unlawfully mischaracterized federal
13 employee obligations, undermining due process rights and exacerbating the coercive atmosphere.
14 These statements have had a chilling effect on the workforce, including Plaintiff, by instilling
15 fear and uncertainty that further harm his professional reputation, employment stability, and
16 authority as a supervisor.

    5. Courts have recognized the severity of such chilling effects. In a related context, a federal judge observed that the chilling effect of a President's retaliatory executive order "threatens to undermine our entire legal system" and accordingly issued a temporary restraining order to halt that unlawful edict. See *Perkins Coie LLP v. DOJ*, No. 25-cv-00716 (D.D.C. 2025) (granting temporary restraining order against executive order targeting law firm, citing chilling effect on constitutional rights). Likewise here, Defendants' coercive actions chill federal

employees from performing their duties without fear, inflicting irreparable harm that warrants prompt judicial intervention.

6. Musk's statements constitute a prohibited personnel practice under 5 U.S.C. § 2302(b), which prohibits coercion in federal employment decisions. Furthermore, 5 U.S.C. § 7513 establishes due process protections for federal employees that Defendants' actions have attempted to bypass. Executive Order 14003 (2021) further reinforces federal employees' due process rights by requiring just cause for any employment termination.

**COUNT V: Violation of the Appointments Clause (U.S. Constitution, Article II, Section 2, Clause 2)**

1. Plaintiff re-alleges and incorporates all previous allegations.

2. The Appointments Clause mandates that principal officers of the United States be appointed by the President with the advice and consent of the Senate. Defendant Musk has been designated as a "special government employee" and serves as a Special Advisor to the President, effectively leading the Department of Government Efficiency (DOGE). Despite this designation, Musk exercises significant authority over multiple federal agencies—including issuing directives affecting federal employment and operations—without having undergone Senate confirmation. This concentration of power, without appropriate constitutional appointment, violates the Appointments Clause, rendering his actions ultra vires and unconstitutional.

3. In *New Mexico v. Musk*, No. 25-cv-00429 (D.D.C. Feb. 13, 2025), fourteen state attorneys general challenged Musk's authority under the Appointments Clause. Although the court denied a temporary restraining order in that case, it acknowledged that the states "legitimately call into question what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight."

    4. Defendant Musk's asserted authority further includes:

    A. Directing the shutdown of federal agencies (such as USAID) and reallocating funds approved by Congress—actions that legal experts consider unconstitutional.

    B. Accessing sensitive data from multiple federal agencies (including the Treasury Department, OPM, and the General Services Administration), raising significant concerns about conflicts of interest and lack of oversight.

    C. Influencing major policy decisions of the administration.

## INJUNCTIVE RELIEF FACTORS

    1. Plaintiff meets all the requirements for preliminary injunctive relief under *Winter v. NRDC*, 555 U.S. 7 (2008). Courts have routinely enjoined federal officials for ultra vires actions. See, e.g., *Perkins Coie LLP v. DOJ*, No. 25-cv-00716 (D.D.C. 2025) (granting a TRO against an unlawful executive directive targeting a law firm); *AFGE v. OPM*, No. 25-cv-01780 (N.D. Cal. 2025) (blocking OPM's unlawful federal employment order); and *New Mexico v. Musk*, No. 25-cv-00429 (D.D.C. 2025) (allowing expedited discovery due to concerns over unchecked executive authority).

    A. Likelihood of Success on the Merits: Plaintiff has demonstrated a strong likelihood of success on the merits, given the clear violations of constitutional and statutory protections. Defendants' directive is ultra vires, unconstitutional, and lacks any lawful authority.

    B. Irreparable Harm: Absent injunctive relief, Plaintiff and other federal employees will suffer irreparable harm. The directive has created ongoing job instability, coerced employees under threat of forced resignation, and disrupted the functioning of federal agencies in ways that cannot be remedied after the fact.

C.  Balance of Equities: The balance of equities favors Plaintiff. Enjoining the directive will prevent unlawful coercion and protect employees' rights without impeding any legitimate government operations, as agencies can continue normal performance management practices in the absence of the challenged mandate.

D.  Public Interest: An injunction serves the public interest by upholding the rule of law and constitutional rights, ensuring lawful governance, and preventing further harm to essential public services and the civil service workforce.

2.  Security Bond: Plaintiff requests that the Court waive any security bond under Federal Rule of Civil Procedure 65(c), as this case seeks to vindicate important constitutional rights and the public interest. Courts routinely grant injunctive relief in public-interest litigation without requiring a bond. See, e.g., *California ex rel. Lockyer v. USDA*, 575 F.3d 999 (9th Cir. 2009) (waiving bond in public-interest case); *Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005 (N.D. Iowa 2006) (waiving bond in a First Amendment challenge).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Declaratory Judgment: Issue a declaratory judgment finding that Defendants' actions are unconstitutional, ultra vires, arbitrary and capricious, and in excess of their statutory authority.

2.  Injunctive Relief: Grant preliminary and permanent injunctive relief prohibiting Defendants and their officers, employees, and agents from enforcing the above-described directive, from threatening federal employees with termination for noncompliance, and from issuing any further coercive or misleading statements related to the directive.

3. Retraction and Notice: Order Defendants to issue an immediate official retraction of any statements indicating that failure to respond to the directive constitutes resignation, and require that this retraction be disseminated via an official OPM email, agency intranet postings, and a public memorandum to all federal employees to ensure clear and widespread notice. Defendants must also issue clear guidance confirming that no federal employee shall face adverse employment consequences for failing to comply with the directive.

4. Expedited Proceedings: Grant expedited consideration of this matter (including advancement on the docket or expedited discovery as needed) in light of the ongoing widespread disruption to federal operations, the irreparable harm being suffered by federal employees, and the risk of permanent damage to the federal workforce.

5. Further Relief: Award any additional relief that this Court deems just and proper.

Respectfully submitted,

/s/
PETER GRELLE


Dated: March 14, 2025