IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION

| | |
|---|---|
| PETER GRELLE <br><br> ███████████████ <br> ███████████████ <br><br> Plaintiff, <br><br> v. <br><br> OFFICE OF PERSONNEL MANAGEMENT <br> 1900 E Street NW <br> Washington, DC 20415 <br><br> ELON MUSK, in his official capacity, <br> c/o Executive Office of the President <br> 1600 Pennsylvania Avenue, NW <br> Washington, DC 20530 <br><br> Defendants. | Case No.: 25-cv-00189-JB/KRS |

### PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

COMES NOW, Plaintiff Peter Grelle, pro se, and respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65(b) for an Emergency Ex Parte Temporary Restraining Order (TRO) enjoining Defendants from implementing or enforcing any directive treating non-response to an OPM communication as voluntary resignation and prohibiting Elon Musk from making further coercive public statements that influence federal employment decisions. In support, Plaintiff states as follows:

**I. FACTUAL BACKGROUND**

1. On February 22, 2025, federal employees received an unclear and ambiguous directive from OPM.

2. That same day, Elon Musk publicly stated that failure to comply with this directive would be interpreted as resignation, creating widespread fear and confusion among federal employees.

3. On February 23, 2025, Elon Musk made another public statement, asserting that employees who complied should be promoted, increasing the coercive nature of the directive by incentivizing compliance and punishing non-compliance.

4. This creates an unlawful employment environment in which federal employees are pressured into compliance under duress, violating their due process rights and subjecting them to unfair treatment based on compliance rather than merit.

5. The White House and OPM have failed to contradict or clarify Musk's statement, leaving thousands of federal employees—including Plaintiff—at risk of immediate, irreparable harm.

## II. LEGAL BASIS FOR EX PARTE RELIEF

1. Federal Rule of Civil Procedure 65(b) permits the Court to issue a TRO without notice to Defendants if the Plaintiff can demonstrate:

    A. Immediate and irreparable harm before Defendants can be heard in opposition.

    B. A clear explanation of why notice should not be required.

2. In State of New Mexico et al. v. Elon Musk et al., U.S. District Judge Tanya Chutkan recognized concerns regarding Musk's influence over federal employment but denied a TRO on the grounds that the plaintiffs did not sufficiently demonstrate immediate, irreparable harm.

3. Unlike that case, Plaintiff here can show specific, imminent harm by detailing how Musk's public statements and OPM's actions are already coercing employees into compliance under threat of job loss or preferential treatment.

4. Given the explicit nature of Musk's public statements regarding promotions and employment consequences, Plaintiff faces a more immediate and direct threat than those in the prior case.

5. Courts have recognized employment coercion as a basis for immediate injunctive relief. In Speiser v. Randall, 357 U.S. 513 (1958), the Supreme Court ruled that government-induced coercion violates constitutional protections, even in the absence of explicit threats.

6. Further, in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), the Supreme Court held that employment decisions made based on arbitrary political or external influence violate due process and employment protections.

7. Here, irreparable harm is imminent because federal employees are being forced into compliance under threat of resignation or unfair employment consequences.

8. Further, providing notice to Defendants would be futile, as the coercive effects are already in motion and ongoing.

### III. PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM

1. The coercive nature of Musk's public statements, combined with OPM's silence, places Plaintiff and other federal employees in an untenable position where they must either:

   A. Comply under duress, altering their professional behavior in fear of termination.

   B. Refuse compliance and risk job loss, despite having no formal, legal directive requiring such action.

2. In State of New Mexico et al. v. Elon Musk et al., the court found that irreparable harm had not been clearly demonstrated. However, in this case, Plaintiff is already experiencing the coercive effects of Musk's public statements and OPM's inaction, making the harm imminent and ongoing.

3. Employment coercion has been recognized as irreparable harm in multiple precedents. In Elrod v. Burns, 427 U.S. 347 (1976), the Supreme Court ruled that job-related coercion that affects constitutional rights constitutes immediate harm, justifying injunctive relief.

4. The threat of lost employment opportunities, wrongful termination, and coerced compliance is sufficient to satisfy the irreparable harm standard set forth in Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963), which ruled that indirect coercion by government officials still violates constitutional protections.

5. In Special Counsel v. Ware, 114 M.S.P.R. 128 (2010), a federal employee was disciplined for politically motivated actions, reinforcing that government employees should not be subjected to improper political or external influence in their employment decisions.

6. Once terminated or denied employment opportunities, the harm is irreversible, as it affects salary, pension benefits, and future employment prospects.

## IV. PUBLIC INTEREST STRONGLY SUPPORTS INJUNCTIVE RELIEF

1. The public has a vested interest in ensuring that federal employment policies are lawful and non-coercive.

2. Allowing a private citizen (Elon Musk) to influence federal employment decisions sets a dangerous precedent, violating separation of powers and due process protections.

3. Further, the recent court rulings in similar cases highlight the need for clearer demonstrations of immediate harm, which Plaintiff has presented. Unlike in State of New

Mexico et al. v. Musk, Plaintiff's case provides direct, real-time evidence of coercion that undermines federal employment protections.

4. Courts have long held that judicial intervention is necessary to prevent unconstitutional employment coercion (Rutan v. Republican Party of Illinois), reinforcing the strong public interest in granting the requested relief.

5. The judiciary must step in to prevent further coercion and ensure government accountability.

## V. BALANCE OF EQUITIES FAVORS PLAINTIFF

1. Granting this TRO does not harm OPM or Elon Musk—it simply ensures that employment decisions remain fair and legally grounded.

2. Conversely, denying the TRO would cause irreparable harm to Plaintiff and other federal employees, forcing them into coerced compliance based on ambiguous and extrajudicial directives.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an immediate Ex Parte Temporary Restraining Order preventing OPM from enforcing any directive that treats non-response as resignation.

2. Enjoin Elon Musk from making further coercive public statements that suggest employment consequences based on compliance with an unverified directive.

3. Prevent OPM and any federal agency from promoting or demoting employees based on compliance with Musk's statements, ensuring employment decisions remain merit-based.

4. Schedule a preliminary injunction hearing at the earliest possible date.

5. Plaintiff respectfully requests that the Court issue an immediate Temporary Administrative Stay preventing Defendants from enforcing OPM's directive until the Court has ruled on this Motion or held a hearing.

6. Plaintiff further requests that this Stay be granted immediately, no later than February 24, 2025, at 5:00 PM MST, to prevent irreparable harm.

## VII. CERTIFICATION OF EFFORTS TO NOTIFY DEFENDANTS

Plaintiff certifies that no prior notice of this Motion has been given to the Defendants because of the immediate and irreparable harm Plaintiff faces. Providing notice would allow Defendants to further entrench the coercive employment practices at issue before the Court has an opportunity to review this Motion. Pursuant to FRCP 65(b)(1)(B), Plaintiff submits that the urgency and nature of the coercion justify the issuance of this TRO without prior notice.

## VIII. WAIVER OF IMMEDIATE SERVICE REQUIREMENT

1. Due to the urgent and time-sensitive nature of this motion, Plaintiff requests that the Court waive immediate service requirements under FRCP 65(b)(1) and issue relief without prior notice to Defendants.

2. Plaintiff will immediately serve all Defendants upon issuance of the TRO.

## IX. REQUEST FOR WAIVER OF SECURITY BOND

Security Bond Waiver Request Plaintiff respectfully requests that the Court waive any security bond requirement under FRCP 65(c), as this case involves constitutional rights violations and Plaintiff is acting pro se with limited financial means.

## X. CONCLUSION

Without immediate judicial intervention, thousands of federal employees—including Plaintiff—will be forced into an unconstitutional and coercive situation. Plaintiff respectfully requests that this Court grant emergency injunctive relief without prior notice to prevent further irreparable harm.

Respectfully submitted,

/s/
PETER GRELLE

Dated: February 24, 2025