IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER GRELLE,

      Plaintiff,

      v.                                        No. 25-cv-189 JB/KRS

OFFICE OF PERSONNEL MANAGEMENT
and ELON MUSK, in his official capacity,

      Defendants.

<u>DEFENDANTS' MOTION TO DISMISS</u>
<u>OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>

Plaintiff seeks sweeping relief—an order limiting Defendant Elon Musk's First Amendment free speech rights and limiting the activities of an Agency that is not a party to this action—based on a misunderstanding of the law and the facts.

The United States Office of Personnel Management (OPM) serves as the chief human resources agency and personnel policy manager for the Federal Government. In that role, OPM sent to Federal employees an email on or about February 22, 2025, "requiring federal employees to submit weekly five-bullet-point summaries of their work" (OPM Email). Doc. 16 at 2 ¶ 1. Shortly thereafter, by memorandum dated February 24, 2025, the Acting Director of OPM issued "Guidance on Government-wide email What did you do last week?" Exhibit A. The OPM memorandum directed that consequences for failure to respond to the activity/accomplishments request is up to agency leadership. *Id.*

Mr. Musk is a Senior Advisor to the President as a non-career Special Government Employee (SGE) in the White House Office. See Declaration of Joshua Fisher, Director, Office of Administration, filed in the United States District Court for the District of Columbia, *State of New Mexico v. Elon Musk*, 1:25-cv-429, Doc. 24-1 (D.D.C. Feb. 17, 2025). Mr. Musk has no actual or formal authority to make government decisions—including any decisions about Plaintiff's employment—and his role is limited to advising the President and communicating the President's directives. *Id.*

Plaintiff's Amended Complaint acknowledges the foregoing. While Plaintiff claims that there was initially confusion whether federal employees were required to respond to the OPM Email, the Department of Defense (DOD), presumably Plaintiff's employer, instructed employees to "submit non-sensitive summaries of their weekly accomplishments." Doc.16 at 5 ¶ 8. Plaintiff has done so. Doc. 19 at 3 ("I have taken extraordinary steps to ensure compliance with directives.").

Plaintiff's claims fail at so many levels. First, Plaintiff lacks Article III standing and has failed to allege redressable injury traceable to Defendants—let alone irreparable harm. Plaintiff's claimed fears about threats to his job are far too speculative to constitute a cognizable Article III injury. Nor are the alleged injuries caused by Defendants. Rather, the undisputed evidence reflects that DOD leadership—not Defendants—are responsible for requiring DOD employees to submit their weekly accomplishments and for whatever consequences may flow from Plaintiff's response(s) to the OPM Email. Accordingly, Plaintiff cannot establish *any* injuries caused by Defendants that could be redressed here.

Even if Plaintiff had standing, he has sued in the wrong forum. The Civil Service Reform Act of 1978 (CSRA) provides the exclusive means of redressing employment disputes involving federal employees. The CSRA provides recourse for federal employees through the Merit Systems Protection Board (MSPB) and appeals from an adverse MSPB decision go to the Court of Appeals for the Federal Circuit. Plaintiff's claims also fail to state a claim for which relief can be granted.

## I. BACKGROUND

### A.     Plaintiff's Amended Complaint

Plaintiff alleges that he is "a non-probationary, career-status" federal employee. His Amended Complaint arises out of an email OPM sent to Federal employees on or about February 22, 2025, "requiring federal employees to submit weekly five-bullet-point summaries of their work." Doc. 16 at 2 ¶ 1. While Plaintiff claims that there was initially confusion whether federal employees were required to respond to the OPM Email, the DOD, presumably Plaintiff's employer, instructed employees to "submit non-sensitive summaries of their weekly accomplishments." *Id*. at 5 ¶ 8. Plaintiff has done so. Doc. 19 at 3 ("I have taken extraordinary steps to ensure compliance with directives.").

Plaintiff also complains that on February 23, 2025, Mr. Musk made a statement on X that "Failure to respond [to the OPM Email] will be taken as a resignation" and on February 26, 2025, he stated that "employees who complied would be 'considered for promotions.'" Doc. 16 at 4 ¶ 4.

Plaintiff claims that he "faces irreparable harm, including severe emotional distress, reputational damage, financial jeopardy, and the threat of wrongful termination resulting from the unlawful directive and Musk's coercive public statements," Doc. 16 at 4 ¶ 6.

Plaintiff asserts five claims for relief:

"Count I: Violation of Statutory Authority and Separation of Powers" states that the OPM Email "exceeds statutory authority" with respect to 5 U.S.C. §§ 302, 1103(c), 3101, 3301, 7106(a), and 7512-7513.

"Count II: Procedural Due Process (Fifth Amendment)" alleges that Plaintiff has a protected property interest in continued federal employment and the OPM Email and Mr. Musk's statements on X "constitute a constructive discharge."

"Count III: Administrative Procedure Act Violations (5 U.S.C. § 706)" alleges that the OPM Email is arbitrary and capricious under 5 U.S.C. § 706(2)(A); exceeds statutory authority under 5 U.S.C. § 706(2)(C); and violates 5 U.S.C. §§ 553 and 706(2)(C).

"Count IV: Improper and Coercive Employment Threats" states that Mr. Musk's statements on X constitute a prohibited personnel practice under 5 U.S.C. § 230(b) and bypasses due process protections provided by 5 U.S.C. 7513.

"Count V: Violation of the Appointments Clause (U.S. Constitution, Article II, Section 2, Clause 2)" states that Mr. Musk exercises significant authority over federal agencies without being confirmed by the Senate, in violation of the Appointments Clause.

Plaintiff seeks: (1) declaratory judgment "that Defendants' actions are unconstitutional, ultra vires, arbitrary and capricious, and in excess of their statutory authority;" (2) "injunctive relief prohibiting Defendants and their officers, employees, and agents from enforcing the above-described directive, from threatening federal employees with termination for noncompliance, and from issuing any further coercive or misleading statements related to the directive;" and (3) an order that Defendants "issue an immediate official retraction of any statements indicating that failure to respond to the directive constitutes resignation," and "issue clear guidance confirming that no federal employee shall face adverse employment consequences for failing to comply with the directive." Doc. 16 at 13.

## B.    The Civil Service Reform Act.

The Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (codified at 5 U.S.C. §§ 7101-35) "establish[es] a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (citation omitted). If an agency takes a final adverse action against an employee no longer in the probationary period—including removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less, 5 U.S.C. § 7512—the employee may appeal to the MSPB. *Id.* § 7513(d). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. *Id.* §§ 1204(a)(2), 7701(g). Employees may appeal final MSPB decisions to the Federal Circuit, which has "exclusive jurisdiction" over such appeals. 28 U.S.C. § 1295(a)(9); 5 U.S.C. 7703. This statutory review scheme is "exclusive,

even for employees who bring constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 13.

## II. STANDARD OF REVIEW

A court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of standing are properly brought pursuant to Rule 12(b)(1) because standing is required for the court to have jurisdiction. *Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1047 (D.N.M. 2020).

A 12(b)(1) motion to dismiss may involve either a facial or factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. *Id*. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. *Id*. When a defendant brings a factual attack, a district court has wide discretion to allow affidavits and other documents to help resolve the jurisdictional question. *Id*. The court's exercise of such discretion does not convert the motion to one for summary judgment unless resolution of the jurisdictional question is intertwined with the merits. *Id*.

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if a plaintiff fails, "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6

"Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555–56.

Under Rule 12(b)(6) "the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and the Court may not consider matters outside the pleadings." *Hunnicutt v. Moore*, No. 2:18-CV-667 JB/KRS, 2020 WL 5764115, at *1 (D.N.M. Sept. 28, 2020), *report and recommendation adopted,* 2020 WL 6883309 (D.N.M. Nov. 24, 2020). While the Court will liberally construe the factual allegations in reviewing a *pro se* complaint, the "pleadings are judged by the same legal standards that apply to all litigants, and a *pro se* plaintiff must abide by the applicable rules of the Court." *Id.* Moreover, the Court need not "craft legal theories for the plaintiff[,] . . . supply factual allegations to support the plaintiff's claims[, or] assume the role of advocate for the *pro se* litigant." *Id.*

### III. UNDISPUTED JURISIDICTIONAL FACTS

1.      OPM sent to Federal employees an email on or about February 22, 2025, "requiring federal employees to submit weekly five-bullet-point summaries of their work." (OPM Email). Doc. 16 at 2 ¶ 1.

2.      Plaintiff alleges that Mr. Musk made the following statements on X: on February 23, 2025, that "Failure to respond [to the OPM Email] will be taken as a resignation" and on February 26, 2025, that "employees who complied would be 'considered for promotions.'" Doc. 16 at 4 ¶ 4.

3.      Mr. Musk does not have authority to fire Plaintiff. *See* Declaration of Joshua Fisher filed in the United States District Court for the District of Columbia, *State of New Mexico v. Elon Musk*, 1:25-cv-429, Doc. 24-1.

4.      By memorandum dated February 24, 2025, the Acting Director of OPM issued "Guidance on Government-wide email What did you do last week?" Exhibit A.[1]

5.      Plaintiff alleges that the DOD "mandated compliance, requiring employees to submit non-sensitive summaries of their weekly accomplishments." Doc. 16 at 5 ¶ 8.

6.      Plaintiff followed DOD's directions. Doc. 19 at 3 ("I have taken extraordinary steps to ensure compliance with directives," meaning he submits weekly five-bullet-point non-sensitive summaries of his work.).

7.      Plaintiff does not allege that he or anyone else has suffered adverse employment consequences based on their response, or lack of response, to the OPM Email. Doc. 16.

## IV. ARGUMENT

Plaintiff's Amended Complaint should be dismissed for at least three independent reasons: (1) Plaintiff lacks standing; (2) the claims are statutorily channeled away from district-court review; and (3) the claims otherwise fail to state a claim for relief.

---

[1] This guidance was published on OPM's public webpage. See https://chcoc.gov/sites/default/files/guidance%20on%2Government-wide%20email%20FINAL.pdf.The court may take judicial notice of published agency guidance. *Sierra Club v. U.S. Env't Prot. Agency*, 964 F.3d 882, 893 n.9 (10th Cir. 2020); *Omnibus Trading, Inc. v. Gold Creek Foods, LLC*, 591 F. Supp. 3d 1334, 1345 (N.D. Ga. 2021) ("Courts have historically taken judicial notice of agency guidance published on the agency's website.").

## A.     Plaintiff Lacks Standing

Plaintiff lacks standing because his claimed injuries are far too speculative to satisfy Article III's standing elements. To establish standing, a plaintiff must show: (i) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). As the party invoking federal jurisdiction, Plaintiff "bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

Plaintiff's allegations are based on a misunderstanding of the facts and "what ifs"—if he is fired, he will suffer certain harm. Such speculative harm is insufficient to satisfy Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."). Plaintiff's claim that he may lose his job is based on a chain of contingencies grounded in unsupported and/or mostly false assumptions. Specifically, under his own theory each of the following must occur for Plaintiff to lose his job (which he concedes has not happened): *First*, Plaintiff must refuse to respond to the OPM Email. *Second*, OPM and/or Mr. Musk must choose to ascertain whether

Plaintiff responded to the OPM Email. *Third*, OPM and/or Mr. Musk must choose to terminate Plaintiff for his possible lack of response to the OPM Email. This speculative chain makes clear that Plaintiff's claimed harm is not "certainly impending," *Clapper*, 568 U.S. at 409. Indeed, Plaintiff concedes that the first step of the chain, which he controls, has not occurred. As Plaintiff acknowledged, he responded to the OPM Email, negating the possibility that a non-response will be interpreted as a voluntary resignation. MJF ¶ 6. Nor does Plaintiff plausibly allege facts that would support his hypothetical harm is likely: Plaintiff does not allege that he or anyone else has suffered adverse employment consequences based on their response, or lack of response, to the OPM Email. MJF ¶ 7.

Moreover, even if Plaintiff had refused to respond, his theory of potential injury rests on the false assumption that OPM and/or Mr. Musk have the power to terminate Plaintiff for his theoretical lack of response to the OPM Email. But Mr. Musk has no authority to terminate Plaintiff's employment. MJF ¶ 3. OPM directed that "[i]t is agency leadership's decision as to what actions are taken." MJF ¶ 4; Ex. A. As Plaintiff alleges, DOD—not Defendants—"mandated compliance." MJF ¶ 5.

In sum, Plaintiff lacks standing because he has failed to establish any "actual or imminent," injury, and because his "conjectural or hypothetical" alleged injury is not traceable to Defendants, but—if it were to occur at all—would be at the hands of DOD, his apparent employer. MJF ¶ 4, 5; *Lujan*, 504 U.S. at 560–61. Moreover, to the extent that Plaintiff fears he will suffer an adverse employment action at the hands of his employing agency, the court "cannot redress 'injury that results from the

independent action of some third party not before the court.'" *Murthy v. Missouri*, 603 U.S. 43, 57, (2024). Plaintiff lacks Article III standing.

## B.    This Court Is Not The Proper Forum For Plaintiff's Federal Employment Claims

The CSRA provides the exclusive means of redressing employment disputes involving federal employees, *see United States v. Fausto*, 484 U.S. 439, 455 (1988)), even when those disputes involve constitutional claims, s*ee Elgin*, 567 U.S. at 10–15, and even when those claims include a systemwide challenge to an agency policy. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 at *2 (D.C. Cir. May 3, 2025). Plaintiff's claims of threatened personnel action must be pursued before the MSPB (if at all). Even if Plaintiff's complained-of actions do not strictly fall under the CSRA's broad definition of prohibited personnel actions, it is still preempted by the CSRA. *Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) ("[B]ecause Congress established this comprehensive scheme to administer public rights in the context of federal employment, it is inappropriate to provide a judicial remedy beyond the regulatory scheme even if the complained-of action is not 'a listed prohibited personnel practice.'").

Similarly, if Plaintiff thinks that threatened voluntary resignation conflicts with any federal rule, guidance, or statute, he may assert that within the MSPB. *See, e.g.*, *Marshall v. HHS*, 587 F.3d 1310, 1318 (Fed. Cir. 2009) (reversing based on an erroneous statutory interpretation); *Lyons v. Dep't of Veteran's Affairs*, 273 F. App'x 929, 931 (Fed. Cir. 2008) (considering whether a regulation was violated); *Fed. L. Enf't Officers Ass'n v. Ahuja* ("*FLEOA*"), 62 F.4th 551, 560 (D.C. Cir. 2023) (noting

challenges to OPM guidance through the MSPB system). Plaintiff's recourse for the complained-of actions is through the MSPB, not here.

## C.    Plaintiff Fails to State a Claim for Relief

### 1.    Plaintiff's "Count I: Violation of Statutory Authority and Separation of Powers" Lacks Merit

Plaintiff's *ultra vires* and separation of powers claims, which appear to be against OPM for the OPM Email, fail as a matter of law. Doc. 16 at 7. Courts have recognized that an equitable cause of action for *ultra vires* review may be available in instances where, because Congress has failed to provide a cause of action, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also Leedom v. Kyne*, 358 U.S. 184, 189 (1958). That cause of action is not available, however, where there is some other "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny . . . District Court jurisdiction[.]" *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991).

These principles apply straightforwardly here to make *ultra vires* review unavailable. First, the CSRA established exclusive procedures for review of employment claims against the federal government. *See Elgin*, 567 U.S. at 10; *Franken*, 763 F. App'x at 681. This precludes courts from providing supplemental remedies, including through *ultra vires* review. *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018) (The CSRA "precludes courts from providing supplemental remedies."). And second,

the exclusive review procedures of the CSRA will provide Plaintiff with a meaningful and adequate opportunity for judicial review of his claims. *See Elgin*, 567 U.S. at 21 (finding "constitutional claims can receive meaningful review within the CSRA scheme"). Thus, there is no basis for this Court to entertain Plaintiff's claim for non-statutory *ultra vires* review.

Even if Plaintiff could surmount those problems, the *ultra vires* claim would still fail. To prevail on an *ultra vires* claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *accord Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) (noting that *ultra vires* actions must involve "a plain violation of an unambiguous and mandatory provision of the statute" that "is of a summa or magna quality"). Allegations of constitutional error do not establish ultra vires action. *Painter v. Shalala*, 97 F.3d 1351, 1358 (10th Cir. 1996). Rather, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Id.*, (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984)); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege that official is "not doing the business which the sovereign has empowered him to do"). This is a "very stringent standard," rendering *ultra vires* claims "essentially a Hail Mary pass" that "in court as in football, . . . rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).

Plaintiff cannot meet this high bar because Plaintiff does not even identify a clear statutory prohibition, which alone, warrants dismissal of the claim. Nor does the OPM Email violate any clear statutory restriction on OPM's authority, and instead constitutes a lawful exercise of OPM's well-established constitutional and statutory authority to regulate the federal workforce. OPM was acting well within its authority to ask the workforce to describe what they have accomplished. Plaintiff's *ultra vires* claim fails.

Plaintiff's separation of powers claim likewise fails. First, "claims simply alleging that [the Agency] has exceeded [its] statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994); *Widakuswara*, 2025 WL 1288817 at *5 ("But these constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes, which does not suffice to trigger the distinctively strong presumptions favoring judicial review of constitutional claims."). In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Dalton*, 511 U.S. at 471. Rather, the Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. In reaching this conclusion, the Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). It explained that the Constitution is

14

implicated only if executive officers rely on it as an independent source of authority to act or if the officers rely on an unconstitutional statute. *Id*. at 473 & n.5.[2]

In contending that the challenged actions violate the separation of powers, Plaintiff is advancing the same argument the Supreme Court rejected in *Dalton*. Plaintiff's alleged separation-of-powers claim hinges entirely on whether OPM acted in accordance with OPM statutory authority in sending out the OPM Email. The outcome of this question depends on resolution of statutory claims rather than any unique separation-of-powers principles. If Plaintiff's argument were accepted, then every garden-variety action by a federal agency alleged to be in violation of a statutory provision could also for the same reason be alleged to violate the constitutional separation of powers. "Under *Dalton*, [Plaintiff] cannot recast these types of claims as constitutional." *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 53; *see Dalton*, 511 U.S. at 474 (stating that the "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the

---

[2] This case thus sharply contrasts with *Youngstown Sheet & Tube Co. v. Sawyer*, cited by Plaintiff in his Amended Complaint, Doc. 16 at 7, in which the President had directed the Secretary of Commerce to seize the nation's steel mills relying solely upon "the aggregate of his powers under the Constitution," and conceded the absence of statutory authority. 343 U.S. 579, 585-87 (1952). Plaintiff has not suggested that OPM's actions are themselves unconstitutional. *Dalton's* reasoning thus applies here and demonstrates that Plaintiff's claim fails. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51-54 (D.D.C. 2020) (rejecting separation-of-powers claim based on Appropriations Clause under *Dalton* because "[a]t bottom, this is just an allegation that [executive officials] exceeded their statutory authority"). This case concerns "simply" whether Defendants have "exceeded [their] statutory authority" and "no constitutional question whatever is raised"—"only issues of statutory interpretation." *Dalton*, 511 U.S. at 473-74 & n.6 (citation omitted).

Constitution, on the other, is too well established to permit this sort of evisceration."). Count I fails to state a claim.

### 2. Plaintiff's Count II: Procedural Due Process Claim Fails as a Matter of Law

Plaintiff claims he has a "constitutionally protected property interest in continued federal employment." Doc. 16 at 8. Assuming for purpose of this motion that Plaintiff is correct, he does not allege that he has been deprived of federal employment. While he claims constructive discharge, he also claims that his harm includes "the threat of wrongful termination," thereby conceding that he has not been discharged at all. Doc. 16 at 4 ¶ 6, 8 ¶ 2.

"The Due Process Clause applies when government has deprived an individual of an interest in liberty or property." *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986). In evaluating a procedural due process claim, the Court undertakes a two-step inquiry: (1) whether the government's actions deprive plaintiff of a constitutionally protected property interest; and (2) whether the plaintiff was afforded due process. *Pater v. City of Casper*, 646 F.3d 1290, 1293 (10th Cir. 2011). Plaintiff cannot get past the first step because there are no allegations that he has been deprived of continued federal employment. To the contrary, the Complaint makes clear that Plaintiff remains a federal employee. Rather, according to the complaint, he received the OPM Email and heard that the President's advisor suggested on X that federal employees who did not respond to the OPM Email would be deemed to have resigned. Doc. 16 at 3-4. This is not a deprivation of a constitutionally protected right. *Harris*, 798 F.2d at 44 (Although plaintiff had a constitutional property interest in continued school

enrollment, he did not have a due process challenge to the placement of a letter in his academic file). These alleged actions have not resulted in a deprivation of a constitutionally protected property interest.

### 3. Plaintiff's APA Claim (Count III) Fails as a Matter of Law

Plaintiff cannot maintain his APA claims because the CSRA provides the exclusive remedy for federal employment claims, see *Fausto*, 484 U.S at 455; *see also FLEOA*, 62 F.4th at 557–67; *Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 741 (10th Cir. 2021), and because the APA does not supply a cause of action for his claims. The APA only authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016) ("Even if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court."). If a plaintiff has an adequate legal remedy, the APA does not provide a cause of action. *See, e.g., Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 709 (5th Cir. 2010) (affirming dismissal of APA claim because plaintiff had an adequate remedy). In this case, Plaintiff has an adequate remedy because he can challenge adverse employment actions before the MSPB. The APA thus does not supply a cause of action for Plaintiff to maintain his claims.

Nor can Plaintiff maintain his arbitrary and capricious claim because the complained of action—the OPM Email and Mr. Musk's statements on X—are not final agency action. An agency action must be final to be judicially reviewable. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004). Finality is governed by a two-part

test. First, the action under review "must mark the consummation of the agency's decisionmaking process." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014). Second, the action must "either determine rights or obligations or occasion legal consequences." *Id.*

Plaintiff's Amended Complaint demonstrates that the agency action did not determine rights or obligations or occasion legal consequences. Instead, Plaintiff outlines his feared legal consequences—loss of employment. But he has not yet suffered any such loss, and such loss is contingent on the results of multiple decisions not yet made. *See supra* at 9-10. This is not a final agency action. *Ansaldo v. United States*, No. 16-CV-00328-CMA, 2018 WL 1084144, at *1 (D. Colo. Feb. 28, 2018) ("An agency action is not final if it 'does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'") (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

Nor does Plaintiff's notice and comment claim survive. The OPM Email is not a rule requiring notice and comment. "Not all 'rules' must be issued through the notice-and-comment process. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). Only "substantive" rules require notice and comment. *Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544, 546 (10th Cir. 1992). "[A] rule is substantive if it is promulgated pursuant to a direct delegation of legislative power by Congress and if it changes existing law, policy, or practice." *Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544, 546 (10th Cir. 1992). Notice and comment are not required for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or

practice." 5 U.S.C. § 553. Neither the OPM Email, nor Mr. Musk's statements on X could be considered "substantive" rules that require notice and comment. Plaintiff's APA claim fails.

### 4. Plaintiff's "Count IV: Improper and Coercive Employment Threats" Fails as a matter of law

Plaintiff alleges that Mr. Musk's statements constitute a prohibited personnel practice under 5 U.S.C. § 2302(b) and Defendants' actions seek to bypass the due process protections established in 5 U.S.C. § 7513. Plaintiff cannot bring a claim under 5 U.S.C. § 2302 "due to preemption by the [CSRA]." *Ryan v. Donley*, 511 F. App'x 687, 690 (10th Cir. 2013). The CSRA provides the exclusive remedy for federal employment claims, see *Fausto*, 484 U.S at 455; *see also FLEOA*, 62 F.4th at 557–67; *Franken*, 763 F. App'x at 681.

### 5. Plaintiff's "Count V: Violation of the Appointments Clause" Fails as a matter of law

The Appointments Clause of the Constitution prescribes the method for appointing officers of the United States. U.S. Const. art. II, § 2, cl. 2. Individuals are officers, and thus must receive a constitutional appointment, when they occupy a continuing position that is vested with the authority to "exercis[e] significant authority pursuant to the laws of the United States." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 506 (2010) (citation omitted). Federal employees who do not meet these criteria "need not be selected in compliance with the strict requirements of Article II." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991).

Here, Plaintiff's Amended Complaint does not plausibly allege an Appointments Clause violation. Plaintiff says little about Mr. Musk's government position—other than describing it as Special Advisor to the Executive Office and concluding without support that he is "overseeing federal workforce performance initiatives." Doc. 16 at 3. Important to the Appointments Clause claim, Plaintiff also asserts that Mr. Musk's authority "was never formally delegated by any statute, regulation, or executive order," though federal agencies allegedly interpreted Mr. Musk's statements as binding. Doc. 16 at 9. Plaintiff's allegations are entirely consistent with the idea that Mr. Musk influenced other government officials—whose authority is not challenged in this lawsuit—to make certain decisions with which Plaintiff disagrees. But even if Mr. Musk could be said to have "directed" these decisions in some colloquial sense, as Plaintiff alleges, that would not establish an Appointments Clause violation. So long as a duly authorized agency official takes formal responsibility for those decisions, the Appointments Clause is satisfied.

Plaintiff's claim also fails because his allegations establish that Mr. Musk's role and attendant influence are personal to him rather than a "continuing position," as required for the Appointments Clause to apply. *See, e.g.*, *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018). This claim should be dismissed.

### a.  Plaintiff Fails to Allege Mr. Musk Occupies an Office Established by Law

For there to be an Appointments Clause challenge, there needs to be an office—*i.e.*, "a continuing position established by law" that is vested with "significant authority pursuant to the laws of the United States." *Id.* (citation omitted); *see Burnap v.*

*United States*, 252 U.S. 512, 516 (1920) ("Whether [a federal official] is an officer or an employee is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties[,] and appointment thereto."). Both prongs of the test established by the Supreme Court make the "office" require-ment clear: the first expressly requires consideration of a *position*, and the second considers the powers *that the law vests in that position*, *i.e.*, what "authority *pursuant to* the laws of the United States" it affords its incumbent. *Lucia*, 585 U.S. at 245 (ci-tation omitted) (emphasis added).

(1) To state an Appointments Clause violation the "threshold trigger" is a gov-ernmental position that is "'established by Law.'" *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1133 (D.C. Cir. 2000) (quoting *Freytag*, 501 U.S. at 881). Once the position is identified, courts analyze whether the authority imbued in that position is significant by reference to the position's duties and powers as reflected in that posi-tion's organic law. *See, e.g.*, *Lucia,* 585 U.S. at 248–49 (analyzing whether administra-tive law judges are officers solely by reference to their duties set forth in statute and regulation); *Freytag*, 501 U.S. at 881; *Landry*, 204 F.3d at 1133. Where the office identified does not reflect a continuing position that exercises significant authority pursuant to the laws of the United States, "the Appointments Clause cares not a whit about who named" a person to that post. *Lucia*, 585 U.S. at 245. As these cases reflect,

this is a formalist inquiry: It turns exclusively on the *de jure*—not *de facto*—authority that a person wields.[3]

Plaintiff identifies no "office" whose authority Mr. Musk allegedly wields. That ends the Appointments Clause challenge.

(2) Relatedly, it is not enough to identify some "office" to plead an Appointments Clause claim; a court must examine the *authority vested by law* in that particular office. *See*, *e.g.*, *Freytag*, 501 U.S. at 881 (looking to statute for office's "duties," and noting that court-appointed special masters are not officers in part because their "duties and functions are not delineated in a statute"). That is why the second prong of *Lucia*'s test asks whether the incumbent of an office is exercising authority vested in that office "*pursuant to the laws* of the United States." 585 U.S. at 245 (emphasis added and citation omitted). To exercise the powers vested in a particular office *by law*, the incumbent of the office must be appointed in the manner the constitution requires for *that particular office* to safeguard the accountability of the official authority of the United States.

Here, Plaintiff does not allege that Mr. Musk occupies an office with any such formal powers.

---

[3] The private nondelegation sphere involves a similar formalist inquiry. There, so long as a governmental officer is the one formally authorizing the given action there is no constitutional defect—even if that action was conceived of by an independent body composed of private persons that exercised decisive influence. *See, e.g.*, *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). What matters for constitutional purposes is who signed on the dotted line.

(3) Plaintiff's alternative theory fundamentally misunderstands the Appointments Clause. Plaintiff appears to be alleging that the Appointments Clause violation arises from the claim that Mr. Musk has wielded significant power. Doc. 16 at 3 ("Musk's public communications are treated as authoritative directives by federal agencies."), 9 ("His authority to make such pronouncements was never formally delegated by any statute, regulation, or executive order. Yet multiple federal agencies interpreted Musk's statements as binding policy directives."). Plaintiff cites no authority for this novel claim, which conflates formal authority and informal influence. Nobody thinks, for instance, that the White House Chief of Staff or White House Counsel are *officers* in any fashion, despite the fact they may exercise tremendous influence across the government. This is because they do not occupy a *position* that is equipped with any formal authority. And without that, there is nothing that implicates the Appointments Clause.

Besides having no basis in law, there is also nothing to recommend Plaintiff's functional approach as a practical matter. It cannot be, for instance, that a Chief of Staff is an officer in some administrations (when she effectively marshals her agenda), but a mere advisor in others (when people ignore her advice). Nor can it be the case that the same individual presidential advisor is an officer at one point in time, when they are perceived as close to the President and their proposals are adopted, and then no longer an officer if their influence is perceived as having waned. Yet, that is precisely the type of analysis Plaintiff appears to contemplate.

In sum, Plaintiff concedes Mr. Musk has no legal authority over any personnel decision. *See id.* at 9 ¶ 2 ("His authority to make such pronouncements was never formally delegated by any statute, regulation, or executive order.). And because Plaintiff does not otherwise identify an office Mr. Musk supposedly holds without proper appointment, his claim fails.

### b.  Even if Mr. Musk Functionally "Directed" the Complained-of Actions, Plaintiff's Appointments Clause Claim Fails

Unable to identify any *actual* authority possessed by Mr. Musk, Plaintiff's primary theory appears to be that Mr. Musk has "directed" others to wield their power according to his will. *See id.* at 16 ("Musk's public communications are treated as authoritative directives by federal agencies."). That theory was rejected by the D.C. Circuit. In *Andrade*, the D.C. Circuit rejected an Appointments Clause challenge asserted in an employment removal action based on the same exact theory. 824 F.2d 1253, 1256–57 (D.C. Cir. 1987). The plaintiffs argued that an official not validly appointed as an officer of the United States "had complete responsibility for crafting and executing" their terminations—*i.e.*, that someone without appointment was pulling the strings, and directing the actions that harmed them. *Id.* at 1257. The court explained that, even if true, that fact was irrelevant: "it does not offend the Appointments Clause so long as the duly appointed official has final authority over the implementation of the governmental action." *Id.*

That principle applies here: Again, Mr. Musk does not have—as Plaintiff concedes—any independent legal authority to command anyone to do anything. Accordingly, *even if* Mr. Musk advised, recommended, or indeed "directed" certain actions

across multiple agencies, the actual legal authority for such actions is not vested in Mr. Musk, but instead in the actual decisionmakers making those decisions. In other words, even assuming that Mr. Musk's communications are "treated as authoritative directives" to which Plaintiff objects, there is no Appointments Clause violation under *Andrade*, because, as Plaintiff concedes, duly appointed agency heads ultimately took responsibility for implementing those actions. Doc. 16 at 5 ¶ 8. What is needed for an Appointments Clause challenge is a governmental action taken by someone lacking the authority to do so. Because Plaintiff does not plausibly allege a single example of that, his Appointments Clause claim fails as a matter of law.

### c.  Mr. Musk Does Not Occupy a "Continuing" Office

Plaintiff's claim also fails for an independent reason: He does not plausibly alleged that Mr. Musk occupies any continuing office. *See Lucia*, 585 U.S. at 245 ("[A]n individual must occupy a 'continuing' position established by law to qualify as an officer." (citation omitted)). Plaintiff admits that Mr. Musk is a non-career SGE, Doc. 16 at 11—a status that lacks the duration characteristic of an office. *See United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867) (explaining the term "office" "embraces the ideas of tenure, duration, emolument, and duties"). As defined by statute, SGEs are necessarily time-limited in their service. *See* 18 U.S.C. § 202. That stands in contrast to the administrative law judges in *Lucia*, for example, who "receive[d] a career appointment." 585 U.S. at 248 (citation omitted). While some nonpermanent positions can qualify as offices, *see Morrison v. Olson*, 487 U.S. 654, 671 n.12 (1988), the limited duration of Mr. Musk's SGE status indicates that his position is not an

office. *Cf. Special Government Employee Serving as Paid Consultant to Saudi Company*, 40 Op. O.L.C. 1, 8–9 (2016) (SGE "d[id] not appear to hold the essential features of a federal office—in particular, 'tenure,' 'duration,' and 'continuous duties'" (citation omitted)).

To be a continuing office, the position also must not be "personal to a particular individual." *United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022). Here, there is no allegation that Mr. Musk's role will outlast his tenure. *See United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (No. 15,747) (Marshall, Circuit Justice) (explaining that an office has "duties [that] continue, though the person be changed"). Indeed, the entire thrust of the Complaint is that Mr. Musk has achieved a special status, particular to him alone. Doc. 16. This does not work. Presidents have long selected advisors based on their "identity"—and thus "who cannot simply be replaced" by others—precisely because the President depends on those advisors' personalized advice and judgment. *Donziger*, 38 F.4th at 297. But those advisors—including Mr. Musk—occupy definitionally *personal*, not *permanent* positions.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint.

Respectfully submitted,

**RYAN ELLISON**
United States Attorney

*/s/ Electronically Filed 5/9/2025*
RUTH F. KEEGAN
Assistant United States Attorney
201 3rd Street NW, Ste. 900
Albuquerque, NM 87102
(505) 346-7274; Fax: (505) 346-7205
Ruth.f.keegan@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2025, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties and counsel of record to be served, as more fully reflected on the Notice of Electronic Filing.

*/s/ Ruth F. Keegan 5/9/2025*
RUTH F. KEEGAN
Assistant United States Attorney