IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION

| | |
|---|---|
| PETER GRELLE ▮▮▮▮▮▮▮▮▮▮ Plaintiff, v. OFFICE OF PERSONNEL MANAGEMENT 1900 E Street NW Washington, DC 20415 ELON MUSK, in his official capacity, c/o Executive Office of the President 1600 Pennsylvania Avenue, NW Washington, DC 20530 Defendants. | Case No.: 25-cv-00189-JB/KRS |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff Peter Grelle, pursuant to Defendants' counsel's express invitation to file a sur-reply addressing new mootness and standing material first raised in Defendants' Reply (Doc. 39), respectfully submits this Sur-Reply.[1] Defendants' eleventh-hour jurisdictional arguments misstate both the law and the record.

---

[1] Defendants' email inviting a sur-reply and attaching the Employee 1 Declaration and Exhibits. See Email from AUSA Ruth Keegan (July 9, 2025) (Doc. 38-1); Employee 1 Decl. (Doc. 38-2); Exhs. A–G (Docs. 39-2–39-8).

1

First, mootness fails. Voluntary cessation requires the Government to carry a "formidable burden" to show it is "absolutely clear" the challenged behavior will not recur; ceasing one manifestation of a broader, unrepudiated practice is not enough.[2] Defendants have not disavowed the asserted authority of an unelected adviser to issue coercive directives to federal employees or OPM's role in facilitating them.

Second, the Government's own Employee 1 Declaration and exhibits—submitted for the first time with its Reply—prove standing. They document a direct, contemporaneous causal chain from OPM's email and Mr. Musk's public threats to DoD's mandate "after consulting with OPM" and expressly "satisfy[ing] all OPM requirements," which Plaintiff was compelled to follow under threat.[3]

Third, Plaintiff's claims are structural and ultra vires, not garden-variety personnel disputes. Under *Free Enterprise Fund* and *Axon*, district courts may hear such claims notwithstanding comprehensive administrative review schemes.[4] This case satisfies all *Thunder Basin* factors: without district-court jurisdiction, meaningful review is unavailable; the claims are wholly collateral to CSRA proceedings; and they lie outside MSPB/OSC expertise.

---

[2] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *FBI v. Fikre*, 601 U.S. 234, 241–43 (2024).
[3] Employee 1 Decl. Exh. D ("A response to this email satisfies all OPM requirements"); Exh. E (DoD-wide 48-hour reply/"bullets" mandate).
[4] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489–91 (2010); *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 187–94 (2023).

Finally, Defendants' First Amendment gloss misfires. The record reflects state action—government direction and enforcement—not protected private commentary.[5] The motion should be denied.

## II. STANDARD OF REVIEW

On a facial Rule 12(b)(1) attack, the Court accepts well-pleaded jurisdictional facts as true and confines review to the complaint and judicially noticeable materials. On Rule 12(b)(6), dismissal is proper only if the complaint fails to state a plausible claim; the Court draws reasonable inferences in Plaintiff's favor.[6]

## III. ARGUMENT

**A. The case is not moot: Defendants cannot satisfy the stringent voluntary-cessation standard.**

Defendants argue mootness because Mr. Musk departed government service and DoD paused the weekly reporting requirement. But a defendant's voluntary cessation moots a case only if it carries the "formidable burden" to show it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[7] The Supreme Court unanimously reaffirmed that rule last Term in *FBI v. Fikre*, holding that removing a plaintiff from the No-Fly

---

[5] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66–72 (1963).
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).
[7] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

List and stating the Government did not anticipate relisting him was insufficient; what matters is a definitive repudiation of the policy or practice enabling the challenged conduct.[8]

Here, Defendants have not repudiated the practice Plaintiff challenges: empowering an unappointed "adviser" to issue directives to the federal workforce and leveraging OPM to effectuate them. Framing the controversy as only the "five-bullet email" misses the point. The core wrong is the unconstitutional assertion of power; pausing a single directive or rotating personnel does not make it "absolutely clear" the behavior will not recur. Nor have Defendants withdrawn OPM-linked guidance or disclaimed similar future mandates. And the effects persist: employees were told non-response would be treated as resignation and publicly branded as noncompliant; those stigmatic and coercive signals have not been retracted.[9] Courts recognize that such lingering reputational and chilling harms sustain a live controversy after nominal cessation.[10]

Defendants cannot moot this case by pausing the challenged practice after it achieved its coercive purpose and then reviving it later. That is the very "return to [the] old ways" problem the doctrine prevents.[11]

**B. The Government's own evidence establishes standing: injury-in-fact and traceability.**

---

[8] *FBI v. Fikre*, 601 U.S. 234, 241–43 (2024).
[9] Doc. 16 ¶ 4.
[10] *Meese v. Keene*, 481 U.S. 465, 473–75 (1987); *Paul v. Davis*, 424 U.S. 693, 708–10 (1976).
[11] *Laidlaw*, 528 U.S. at 190; *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013).

Defendants assert Plaintiff's injuries are speculative and caused by a third party (DoD). Their own Employee 1 Declaration and exhibits prove otherwise, tracing a moment-by-moment chain of causation from OPM and Musk to DoD's mandate:

1. **Feb. 22, 2025** — OPM sent a government-wide email ("What did you do last week?") requiring replies by a set time (Employee 1 Decl. Exh. A).[12]

2. **Feb. 23, 2025** — Mr. Musk publicly warned: "Failure to respond will be taken as a resignation."[13]

3. **Feb. 23, 2025** — DoD leadership ordered employees to pause any response to OPM's email pending DoD coordination (Employee 1 Decl. Exh. B).[14]

4. **Mar. 1, 2025** — After consulting with OPM, DoD announced a mandatory forthcoming DoD-wide reporting requirement and timing, stating: "A response to this email satisfies all OPM requirements" (Employee 1 Decl. Exh. D).[15]

5. **Mar. 3, 2025** — DoD issued the formal mandate: "All DoD civilian employees will … [reply] within 48 hours" with bullet points on prior week's work (Employee 1 Decl. Exh. E).[16]

This record demonstrates injury-in-fact (present coercion and compelled compliance under threat, reputational harm, and altered behavior), and traceability (DoD expressly acted after consulting OPM and to satisfy OPM requirements—i.e., as an instrument of the challenged

---

[12] Employee 1 Decl. Exh. A
[13] Doc. 16 ¶ 4.
[14] Employee 1 Decl. Exh. B.
[15] Employee 1 Decl. Exh. D.
[16] Employee 1 Decl. Exh. E.

policy). Courts recognize that stigmatic labeling and the need to take ameliorative steps to counter it constitute cognizable injury; and a credible threat of enforcement suffices without awaiting punishment.[17] This is not "subjective chill." Cf. *Laird v. Tatum*; *Clapper v. Amnesty Int'l*—those involved speculative harms without express threats tied to governmental follow-through.[18]

**C. The CSRA does not preclude jurisdiction over Plaintiff's structural and ultra vires claims; futility supplies an alternative basis.**

Defendants' reliance on *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), is misplaced. *Elgin* involved employees who had already been removed from service and who challenged the constitutionality of the statute authorizing their removals. The Supreme Court emphasized that those plaintiffs could—and did—obtain "meaningful review" through the CSRA channel because: (1) they were challenging a final adverse action within the MSPB's jurisdiction, (2) the MSPB could make a factual record for review, and (3) the Federal Circuit could adjudicate the constitutional question on that record.

This case is fundamentally different:

1. **No final adverse action exists.** Plaintiff has not been removed, suspended, demoted, or subjected to any other "adverse action" within 5 U.S.C. § 7512. The challenged conduct is a *pre-enforcement, here-and-now* constitutional violation: subjection to an asserted chain of command that includes an unelected, unappointed "adviser" issuing directives to

---

[17] *Meese v. Keene*, 481 U.S. 465, 473–75 (1987); *Paul v. Davis*, 424 U.S. 693, 708–10 (1976).
[18] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416–17 (2013); *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

the civil service, with OPM as an enforcement conduit. Because no MSPB-reviewable adverse action exists, there is no CSRA "channel" available to reach Plaintiff's claims.

2. **The claims challenge the Government's "power to proceed" at all.** As in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), Plaintiff contests the constitutionality of the decision-maker's very authority—not the correctness of an agency's merits determination in an employment dispute. The MSPB cannot decide whether the Executive Branch may constitutionally empower a non-appointed individual to direct federal employees, and it has no jurisdiction to review OPM's government-wide policy decisions absent a covered personnel action.[19]

3. **Meaningful review would be unavailable.** Waiting for an adverse action would require Plaintiff to "bet the farm" (*Free Enterprise Fund*, 561 U.S. at 490) by refusing to comply with a coercive, unconstitutional directive and risking immediate termination. That is precisely the sort of Hobson's choice the Court in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007), held was not required before seeking judicial review.[20]

4. **Outside agency expertise.** The MSPB and OSC are expert in applying civil-service statutes to individual personnel actions, not in adjudicating Article II separation-of-powers questions, ultra vires theories, or Appointments Clause challenges. These issues

---

[19] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 187–94 (2023); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994).
[20] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490–91 (2010); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).

are purely legal and structural, lying outside their specialized competence (*Thunder Basin* factor three).[21]

Even if the Court were to find some potential CSRA channel, exhaustion here would be futile: (i) the MSPB presently lacks capacity to issue timely final decisions in many cases due to systemic backlog and quorum issues; (ii) OSC's investigation and corrective-action powers are discretionary and non-binding; and (iii) neither forum can enjoin ongoing unconstitutional arrangements before harm becomes irreversible.[22]

For these reasons, the *Axon*/*Free Enterprise Fund* framework, not *Elgin*, governs. Plaintiff's claims are "wholly collateral" to any CSRA proceeding, cannot receive meaningful review there, and raise issues far outside MSPB/OSC expertise. District-court jurisdiction is proper.

**D. Defendants' First Amendment argument is inapposite; the conduct is state action.**

Defendants recast Musk's directives as protected private speech. The record shows state action—coordination with OPM and agency enforcement. Government "significant encouragement" and coercion convert private conduct into state action, and informal governmental "pressure" and "thinly veiled threats" are actionable.[23] Plaintiff challenges the

---

[21] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190–92 (2023).
[22] *Elgin v. Dep't of Treasury*, 567 U.S. 1, 17–23 (2012); *Webster v. Doe*, 486 U.S. 592, 603–05 (1988).
[23] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66–72 (1963).

governmental implementation of the directives; the First Amendment does not immunize coercive government action.

## IV. CONCLUSION

Defendants have not carried their formidable burden to moot this case; the Government's own evidence proves standing; Plaintiff's claims fall outside CSRA preclusion; and the First Amendment offers no shield. The motion to dismiss should be denied. In the alternative, if the Court has any doubt about jurisdictional facts, Plaintiff respectfully requests targeted jurisdictional discovery or a brief evidentiary hearing.

Respectfully submitted,

/s/
PETER GRELLE

Dated: August 24, 2025

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2025, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties and counsel of record to be served.

/s/
Peter Grelle