# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PETER C. GRELLE,

      Plaintiff,

vs.                                        No. CIV 25-0189 JB/KRS

OFFICE OF PERSONNEL MANAGEMENT;
and ELON MUSK, in his official capacity, c/o
Executive Office of the President,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants Motion to Dismiss or, Alternatively, for Summary Judgment, filed May 9, 2025 (Doc. 28)("Motion").  On May 23, 2025, Plaintiff Peter C. Grelle files Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, filed May 23, 2025 (Doc. 30), and the Defendants, Office of Personnel Management ("OPM") and Elon Musk ("Musk"), files Defendant's Reply In Support of Its Motion to Dismiss Or, Alternatively, for Summary Judgment, filed July 11, 2025, (Doc. 39; Doc. 46).  On August 17, 2025, the Court grants the Plaintiff's Unopposed Motion to File a Sur-Reply (Doc. 42).  Grelle files a Surreply on August 24, 2025 (Doc. 43).  The primary issues are whether the Court should dismiss the case for: (i) lack of subject-matter jurisdiction, because Grelle does not have standing or because he has not exhausted his administrative remedies; or (ii) failure to state a claim.  Upon consideration of the parties' submissions, the record, and the relevant law the Court will grant the Motion.

## FACTUAL BACKGROUND[1]

---

[1] The Defendants' Motion presents "a factual attack on subject matter jurisdiction."  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  Specifically, the motion seeks -- through the introduction of evidence -- to establish that "leadership of the Department of Defense ("DoD")

Grelle files this action on February 24, 2025, seeking a temporary restraining order to enjoin the Defendants from "implementing or enforcing any directive treating non-response to an OPM communication as voluntary resignation."  Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order at 1, filed February 24, 2025 (Doc. 2); see Declaration of Peter Grelle In Support of Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, filed February 24, 2025 (Doc. 1).  On March 18, 2025, Grelle files the currently operative First Amended Complaint for Declaratory and Injunctive Relief (Doc. 16)("FAC").

The FAC's factual allegations are as follows.  At all times relevant to his claims, Grelle is a federal employee in a non-probationary career-status position.  See FAC ¶ 1, at 2.  OPM is a federal agency responsible for federal employment policies.  See FAC ¶ 2, at 2.  Musk was a Special Advisor to the Executive Office of the President, overseeing the Department of Government Efficiency ("DOGE").  See FAC ¶ 3, at 3.  On February 22, 2025, OPM issues an email (the "OPM Email") directive to all federal employees requiring employees to submit a weekly email summarizing five accomplishments from the prior week in bullet point format and cc'ing their supervisor.  See FAC ¶ 3, at 3; see also Declaration Exhibit A.

On February 23, 2025, Musk posted on X (formerly Twitter): "Failure to respond [to the OPM Email] will be taken as a resignation."  FAC ¶ 4, at 4.  Also on February 23, 2025, Darin S.

---

directed that employees (including employees of the Army) not respond to the OPM email and instead established a separate DoD requirement for employees to report their accomplishments," and clarifies internal agency policy regarding personnel oversight.  Declaration Exhibit A, filed January 30, 2026 (Doc. 46-2)(asserting that this fact deprives the Court of subject-matter jurisdiction); (Docs. 46-2 through 46-8)(Defendant presenting eight exhibits, totaling over 20 pages, in support of this factual assertion).  Consequently, to the extent that Plaintiff's FAC alleges employees must report weekly emails to the Defendants and the Defendants control oversight of DoD personnel, "[the Court] may not presume the truthfulness of factual allegations."  Holt, 46 F.3d at 1003.  The Court "accept[s] as true," however, all other "well-pleaded factual allegations in [the Plaintiff's FAC] and view[s] them in the light most favorable to [Grelle]."  Supra note 4 (quoting Garling, 849 F.3d at 1292-93).

- 2 -

Selnic, Performing the Duties of the Under Secretary of Defense for Personnel and Readiness, emails DoD employees informing them that DoD is responsible for reviewing the performance of its personnel.  See Declaration Exhibit B, filed January 30, 2026 (Doc. 46-3).  Selnic further directs DoD employees to "pause any response to the OPM email titled 'What did you do last week.'" Declaration Exhibit B; FAC ¶ 8, at 5.

On February 24, 2025, Acting Director of OPM issue a memorandum titled "Guidance on Government-wide email What did you do last week?," February 24, 2025, Memorandum at 1, filed May 9, 2025 (Doc. 28-1).  The February 24, 2025, Memorandum provides: "[A]gencies should consider any appropriate actions regarding employees who fail to respond to activity/accomplishment requests.  It is agency leadership's decision as to what actions are taken." February 24, 2025, Memorandum at 1.

On February 26, 2025, OPM and the Office of Management and Budget issue a joint guidance titled, "Guidance on Agency RIF and Reorganization Plans Requested by Implementing the President's [DOGE] Workforce Optimization Initiative."  FAC ¶ 6, at 4.  The communication indicates plans for a reduction in force and reorganization.  See FAC ¶ 6, at 4.  On February 26, 2025, Musk also publicly states that employees who respond to the OPM Email will be considered for promotions.  See FAC ¶ 4, at 4.  Musk's public statements create a "coercive work environment" and a "chilling effect" on federal employees because of his comments indicating adverse employment actions for failure to comply with the OPM Email.  FAC ¶ 9, at 5.

The American Federation of Government Employees ("AFGE") later challenges OPM's directive, arguing that Musk's public statement on X (formerly Twitter) does not reflect in the OPM Email and the OPM's directive does not have a legal basis.  FAC ¶ 2, at 3.  AFGE further advises federal employees to forward the OPM Email to their supervisors and wait until further guidance from the employees' agencies.  See FAC ¶ 3, at 3.  The Defendants do not issue any

formal clarification, retraction, or correction to the OPM Email or Musk's prior statements.  See FAC ¶ 5, at 4.

On February 28, 2025, OPM sends a second email that mirrors the original OPM Email and directive.  See Declaration Exhibit C, filed January 30, 2026 (Doc. 46-4).  Grelle subsequently reconsiders his employment with the DoD and financial plans in anticipation of potential job loss.  See FAC ¶ 6, at 4.  He further alleges that he has suffered "severe emotional distress, reputational damage, financial jeopardy, and the threat of wrongful termination" because of the Defendants' statements.  See FAC ¶ 6, at 4.

On March 2, 2025, the DoD notified all civilian employees that it would send an email similar to the OPM Email on March 3, 2025.  See Declaration Exhibit D, filed January 30, 2026 (Doc. 46-5).  The DoD directs employees to respond within forty-eight hours of receipt or upon forty-eight hours after regaining access to their government email.  See Declaration Exhibit D.  On March 3, 2025, the DoD emails all civilian employees an updated guidance regarding the directive for weekly emails.  The email noted: "[N]on-compliance may lead to further review."  See Declaration Exhibit E, filed January 30, 2026 (Doc. 46-6).  The DoD sends similar weekly emails on March 7, 2025, March 14, 2025, March 21, 2025, March 28, 2025, April 4, 2025, April 11, 2025, April 18, 2025, April 24, 2025, May 2, 2025, May 13, 2025, and May 16, 2025.  See Declaration Exhibit F at 1-11, filed January 30, 2026 (Doc. 46-7).

On May 23, 2025, the DoD emails all civilian employees stating that it is concluding the "five-bullet" exercise.  Declaration Exhibit F at 12.

## PROCEDURAL BACKGROUND

Grelle files this action on February 24, 2025, seeking a temporary restraining order to enjoin the Defendants from "implementing or enforcing any directive treating non-response to an OPM communication as voluntary resignation."  Plaintiff's Emergency Ex Parte Motion for

Temporary Restraining Order at 1, filed February 24, 2025 (Doc. 2); see Declaration of Peter Grelle In Support of Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order, filed February 24, 2025 (Doc. 1).  On March 18, 2025, Grelle files the currently operative First Amended Complaint for Declaratory and Injunctive Relief (Doc. 16)("FAC").  Grelle asserts the following five claims against Defendants.

1.    **Count I: Violation of Statutory Authority and Separation of Powers.**

Grelle contends that the Defendants violate several statutory provisions that overlook federal employment policies: (i) adverse employment actions against federal employees, 5 U.S.C. §§ 7512-7513; (ii) OPM's limited authority over other agencies' personnel decisions, 5 U.S.C. § 1103(c); (iii) President of the United States and individual agency heads control over federal employment policies, 5 U.S.C. § 3301; (iv) individual agency heads management rights, i.e., decisions regarding personnel actions and work assignments; and (v) separation of powers by usurping Congress' exclusive power to define the terms and conditions of federal employment. See FAC ¶¶ 1-3, at 7.

2.    **Count II: Procedural Due Process (Fifth Amendment).**

Grelle asserts a Constitutionally protected property interest in his continued employment with a federal agency.  The Defendants' communications that failure to respond to the OPM Email will result in a voluntary resignation constitutes a constructive discharge without due process -- notice and an opportunity to be heard. See FAC ¶¶ 1-2, at 7-8.

3.    **Count III: Administrative Procedure Act ("APA) Violations (5 U.S.C. § 706).**

Grelle contends that the Defendants' communications lack a rational basis, because they equate failure to respond with voluntary resignation.  The policy does not take into account reasons for which an employee may not respond, "such as illness, approved leave, or confusion . . . ." As a direct result, the policy creates "substantial disruption in agency operations and significantly

damaged employee morale and productivity."  FAC ¶¶ 2(A), at 8.  The policy further exceeds OPM's statutory authority and overrides individual agencies' authority regarding personnel decisions.  See FAC ¶¶ 2(B), at 8.  The policy further violates the APA, because the Defendants do not comply with mandatory "notice-and-comment rulemaking process" and, thus, deprives federal employees and the public of the opportunity to respond.  See FAC ¶¶ 2(D), at 8.

### 4.    Count IV: Improper and Coercive Employment Tactics.

Musk lacks authority to implement binding policies on federal employees and undermines agency performance metrics.  See FAC ¶ 2, at 9.  Musk's comments create "confusion, fear, and disruption among federal employees."  See FAC ¶ 3, at 9.  Performance evaluations are dictated by externally imposed criteria rather than agency standards.  Plaintiff's supervisory authority has been greatly diminished as a direct result.  See FAC ¶ 4, at 9-10.  Further, the DoD's mandated compliance, with the threat of discipline, reinforces the coerciveness of Defendants' communications.  See FAC ¶ 4, at 10.  In turn, stress and contemplating affects Grelle's personal and financial stability.  See FAC ¶ 4, at 10.  Musk's statements also "had a chilling effect on the workforce" by creating fear, potential damage to Grelle's professional reputation, employment stability, and supervisory authority.  See FAC ¶ 4, at 10.  Musk's statements also violate 5 U.S.C. § 2302, which prohibits coercion in federal employment practices, and 5 U.S.C. § 7513, which requires due process for adverse employment actions.  See FAC ¶ 6, at 11.

### 5.    Count V: Violation of the Appointments Clause.

Musk was appointed as "Special Advisor to the President" and oversees DOGE without undergoing Senate confirmation.  See FAC ¶ 2, at 11.  Grelle seeks declaratory judgment finding the Defendants' actions were "unconstitutional, ultra vires, arbitrary and capricious, and in excess of their statutory authority."  See FAC ¶ 1, at 13.  He further seeks a preliminary and permanent injunction prohibiting the Defendants and other federal personnel from enforcing the OPM Email

and directive.  See FAC ¶ 1, at 13.  Grelle also requests the Court to order an "immediate and official retraction" pertaining to the OPM Email and directive, expedites proceedings, and any other award that is just and proper.  FAC ¶ 3, at 14.

## LEGAL STANDARDS

**1.      Rule 12(b)(1) of the Federal Rules of Civil Procedure.**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  See Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994)(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorize).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).  When reviewing a facial attack, the court assumes the allegations in the complaint as true and questions the sufficiency of the complaint.  See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995)("Holt").  See also Baker v. USD 229 Blue Valley, 979 F.3d 866, 872 (10th Cir. 2020)("Baker").  When reviewing a factual attack, the court does not take the allegations as true and may consider extrinsic evidence in its analysis.  See Holt, 46 F.3d at 1003.  Moreover, where the complaint's allegations conflict with the facts shown in the exhibits, it is the exhibits which control.  See Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969).  See also Ctrs. v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th

Cir. 2005)("[T]o the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1327 (3d ed. 2004)("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969). The Defendants' Motion is a factual attack on the Court's subject-matter jurisdiction, and so the Court does not take well-pleaded facts as true and may go beyond the pleading to determine whether jurisdiction exists. See Baker, 979 F.3d at 872.

When seeking a preliminary injunction, a plaintiff's burden to establish standing "will normally be no less than that required on a motion for summary judgment." Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011)(quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 907 n.8 (1990)). To establish standing for a preliminary injunction, "a plaintiff cannot rest on such mere allegations, as would be appropriate at the pleading stage, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Cacchillo v. Insmed, Inc., 638 F.3d at 404 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

## 2.    Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a motion to dismiss under rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Leverington v. City of Colo. Springs, 643 F.3d 719, 723 (10th Cir. 2011)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))("Iqbal"). This standard does not require "detailed factual allegations," but it does

require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." Leverington, 643 F.3d at 723 (quoting Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009)). The court need not accept, however, the truth of any legal conclusions. Iqbal, 556 U.S. at 678.

**3.      Pro Se Litigant's Pleadings.**

A pro se litigant's pleadings are broadly construed and "held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court cannot assume, however, the role of advocate for the pro se litigant. Hall v. Bellmon, 935 F.2d at 1110. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall v. Bellmon, 935 F.2d at 1110. "The Court may not assume that a pro se litigant can prove facts that have not been alleged, or that a defendant has violated laws in ways that the pro se litigant has not alleged." Amaya v. Bregman, 149 F. Supp. 3d 1312, 1317 (D.N.M. 2015)(citing Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)).

## ANALYSIS

The Defendants move to dismiss Grelle's FAC on three grounds: (i) lack of subject-matter jurisdiction, because Grelle does not have standing; (ii) lack of subject-matter jurisdiction, because Grelle has not exhausted his administrative remedies; and (iii) for failure to allege a plausible claim. See Motion at 1. Because jurisdiction is a threshold inquiry, the Court first considers the Defendants' argument that the Court should dismiss all of Plaintiff's claims because he lacks standing. See United States v. Springer, 875 F.3d 968, 973 (10th Cir. 2017)("Jurisdiction is a threshold question that a federal court must address before reaching the merits . . .")(quoting

Payton v. U.S. Dep't of Agric., 337 F.3d 1163, 1167 (10th Cir. 2003); Citizen Ctr. v. Gessler, 770 F.3d 900, 906 (10th Cir. 2014)(citing WildEarth Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1182 (10th Cir. 2012)(standing is jurisdictional).   As a question of subject-matter jurisdiction, standing provides a basis for a rule 12(b)(1) dismissal.

## I.    GRELLE'S STANDING UNDER ARTICLE III.

Under Article III of the United States Constitution, a plaintiff must have standing to bring his or her claims.  See TransUnion LLC v. Ramirez, 594 U.S. 413 (2021); Brady Campaign to Prevent Gun Violence v. Brownback, 110 F.Supp.3d 1086, 1091 (D. Kan. 2015)("One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing.").  "[T]he elements of standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case." Colo. Outfitters Ass'n v. Hickenlooper, 823 F.3d 537, 544 (10th Cir. 2016)(quoting Lujan, 504 U.S. at 561).  To demonstrate Article III standing, the plaintiff must establish three elements:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61.  The plaintiff "bears the burden of establishing these elements," which at the pleading stage means the plaintiff must "allege facts demonstrating each element." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)("Spokeo, Inc.").

### 1.    Grelle's Alleged Injuries in Fact.

The requirement that a plaintiff demonstrate an injury in fact is "the '[f]irst and foremost' of standing's three elements." Spokeo, Inc., 578 U.S. at 338-39 (quoting Steel Co. v. Citizens for

Better Env't, 523 U.S. 83, 103 (1998)).  A plaintiff may establish an "injury in fact" by showing that the plaintiff "suffered 'an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Spokeo, Inc., 578 U.S. at 339 (citing Lujan, 504 U. S. at 560).

To be concrete, an injury must "be 'real' rather than 'abstract.'"  Lupia v. Medicredit, Inc., 8 F.4th 1184, 1190 (10th Cir. 2021)(quoting Spokeo, Inc., 578 U.S. at 340).  The injury need not be, however, "tangible" -- some intangible injuries will be sufficiently concrete for standing purposes.  Lupia v. Medicredit, Inc., 8 F.4th at 1190 (quoting Spokeo, Inc., 578 U.S. at 340).  Concrete intangible injuries "are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion."  Lupia v. Medicredit, Inc., 8 F.4th at 1190.  See Spokeo, Inc., 578 U.S. at 340-41 (2016).  This "inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury," but "does not require an exact duplicate."  TransUnion LLC, 594 U.S. at 424.

An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  Spokeo, Inc., 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1).  In other words, the injury has to be "personal," "distinct," and "not undifferentiated."  Spokeo, Inc., 578 U.S. at 339.  In contrast, "[i]njuries that are too 'widely shared' or are 'comparable to the common concern for obedience to the law'" may not be particularized.  Lyman v. Baker, 954 F.3d 351, 361 (1st Cir. 2020)(quoting Becker v. FEC, 230 F.3d 381, 390 (1st Cir. 2000)).  The particularization requirement "reflects the commonsense notion that the party asserting standing . . . must allege that he, himself, is among the persons injured by th[e defendant's] conduct."  Hochendoner v. Genzyme Corp., 823 F.3d 724, 731-32 (1st Cir. 2016).  The parties request sharpens "in a concrete factual context" with parties with "a direct stake in the outcome."  Hochendoner v. Genzyme Corp., 823 F.3d at 731-32.

- 11 -

As for actual or imminent, the plaintiff must show that the injury already occurs or likely is to occur soon.  See Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024).  An alleged "future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)(quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2016)).  This means that "'[a]llegations of possible future injury' are not sufficient."  Clapper, 568 U.S. at 409 (alteration in original)(quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Where, as here, a plaintiff seeks prospective relief, the plaintiff must show a continuing injury.  See PeTA, People for the Ethical Treatment of Animals v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir. 2002); Hooper v. City of Tulsa, 71 F.4th 1270, 1277 (10th Cir. 2023)("Because Mr. Hooper's declaratory judgment claim seeks prospective relief, he must demonstrate a continuing injury.").  See also Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014)("When prospective relief . . . is sought, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.").  With respect to causation, a plaintiff must also establish that its injury "likely was caused or likely will be caused by the defendant's conduct."  All. for Hippocratic Med., 602 U.S. at 382.  If a plaintiff contends that he sustains Constitutional injury in the past, he can maintain a declaratory or injunctive action if he is able to "demonstrate a good chance of being likewise injured in the future."  Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991).  See Steel Co., 523 U.S. at 109 ("Because respondent alleges only past infractions . . . , and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury.");

The seminal case on standing for prospective relief is City of L.A. v. Lyons, 461 U.S. 95 (1983)("Lyons").  Addressing standing on a motion for a preliminary injunction, the Supreme Court finds a plaintiff lacks standing to seek prospective relief when challenging a police

department's use of chokeholds.  Lyons, 461 U.S. at 105-07.  According to Lyons, establishing an injury in fact in this procedural setting requires the plaintiff to satisfy two requirements: first, that he would have another encounter with police and, second, that either: (i) all police officers in the department always use chokeholds; or (ii) the pertinent city orders or authorizes the procedure.  Lyons, 461 U.S. at 105-07. at 105-06.  Essentially, the plaintiff must establish that "he was likely to suffer future injury" as a result of the policy or practice.  Lyons, 461 U.S. at 105-07.  "Past exposure to illegal conduct does not in itself show a present case or controversy[,]" but "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).  When assessing likelihood of future injury, a key consideration is whether the plaintiff challenges an existing statute or policy as unconstitutional.  See O'Shea v. Littleton, 414 U.S. at 496.

As an initial matter, the Court notes that Grelle does not contend that he has suffered any "tangible" injury, such as the loss of money or property, as a result of the alleged misconduct.  Spokeo, Inc., 578 U.S. at 340.  That fact is not fatal to his claim, however, because that an injury must be concrete does not mean that it must be "tangible."  Spokeo, Inc., 578 U.S. at 340 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").  Nevertheless, "[e]ach subsidiary element of injury -- a legally protected interest, concreteness, particularization, and imminence -- must be satisfied."  Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996-97 (11th Cir. 2020).  As the Court outlines in the sections that follow, the Court concludes that: (i) the Defendants, for the Motion's limited purposes, assume Grelle has a legally protected interest in his federal employment; (ii) the alleged injuries are not "concrete" and "particularized" enough to constitute a judicially cognizable injury sufficient to confer standing; and (iii) the alleged injuries are also "conjectural or hypothetical," and not "actual or imminent."  Lujan, 504 U.S. at 560.

- 13 -

Here, Grelle argues that he establishes an injury in fact, because he has "suffered reputational damage, severe professional anxiety, and interference with his official duties" as a result of the Defendants' direct communications with Grelle (the OPM Email) and the public (e.g., Musk's statements on X), FAC ¶ 6, at 4, ¶ 9, at 5, ¶ 4, at 10 (reputational harm); FAC ¶¶ 5, 6, at 4 (anxiety); FAC ¶ 9, at 5, ¶ 4, at 10 (interference with supervisory authority); Response at 3; Plaintiff's Surreply at 5-6. Grelle also contends that Defendants' conduct and "coercion" have a "chilling effect" on Grelle, and other federal employees, that results in them altering their work behavior, including "self-censorship" and compliance with the "compelled conduct." FAC ¶ 4, at 4, ¶ 9, at 5; Response at 3; Plaintiff's Surreply at 5-6. He maintains that the chilling effect of the Defendants' coercion is a judicially cognizable injury. FAC ¶ 4, at 4, ¶ 9, at 5, 5 ¶ 9; Response at 3; Plaintiff's Surreply at 5-6. Finally, Grelle asserts a continuing and future harm of adverse employment actions without due process based on the Defendants' coercion. FAC ¶ 4, at 4, ¶ 9, at 5, 5 ¶ 9; Response at 3; Plaintiff's Surreply at 6. The Court addresses each purported injury in fact in turn.

### a.    Plaintiff's Legally Protected Interest.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "A public employee has a property interest in her job if she has a legitimate claim of entitlement to it, a claim which would limit the employer's ability to terminate the employment." Johnson v. Sw. Miss. Reg'l Med., 878 F.2d 856, 858 (5th Cir. 1989). The Plaintiff can establish entitlement by showing an express agreement between the parties, or State law or policy.[2] See Cabrol v. Town of Youngsville, 106 F.3d 101, 106 (5th Cir.

---

[2] The Civil Service Reform Act ("CSRA") "establishes a framework for evaluating personnel actions taken against federal employees." Kloeckner v. Solis, 568 U.S. 41, 44 (2012);

1997)(citing Roth, 408 U.S. at 577; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538

(1985); Schaper v. City of Huntsville, 813 F.2d 709, 713 (5th Cir. 1987)).

In the FAC, Grelle asserts that he "has a constitutionally protected property interest in

continued federal employment." FAC ¶ 2, at 8. In his response brief, Grelle alleges that the

"coercive" work environment, stemming from the Defendants' communications, "amount[s] to a

constructive deprivation of that property interest." Response 12. Grelle does not proffer any other

factual allegations or legal citations supporting his contention. Although the Court liberally

construes Grelle's responsive brief and other pro se filings, "the court cannot take on the

responsibility of serving as the litigant's attorney in constructing arguments . . . . '[W]e cannot fill

the void [in a pro se litigant's briefing] by crafting arguments and performing the necessary legal

research.'" Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840-41 (10th Cir.

2005)(quoting Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001)). See e.g., Firstenberg v.

City of Santa Fe, 696 F.3d 1018, 1024 (10th Cir. 2012)("[A]s we often reiterate, the generous

construction that we afford pro se pleadings has limits, and we must avoid becoming the plaintiff's

advocate.").

The Defendants, nevertheless, for the Motion's limited purposes, assume that Grelle has a

protected property interest in his continued employment. See Motion at 16. Hence, the Court need

---

see 5 U.S.C. § 2302(b). The CSRA is the "exclusive remedy of the federal employee," even for
alleged deprivations of Constitutional rights. Stephens v. Dep't of Health & Human Servs., 901
F.2d 1571, 1575 (11th Cir. 1990); see Wells v. F.A.A., 755 F.2d 804, 809-10 (11th Cir.
1985)(holding that the CSRA's remedies precluded a plaintiff's due process claim brought under
Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971)).
Applicable here, the CSRA provides federal civilian employees with procedural due process --
notice, opportunity to respond, appeal rights to the Merit Systems Protection Board -- against
major adverse employment actions, as those employees possess a Constitutionally protected
property interest in their employment. See U.S. Merit Sys. Prot. Bd., at 3, What is Due Process in
Federal Civil Service Employment? (May 2015).

not assess this first component of Article III standing and presumes, per Defendants' Motion, that Plaintiff has a legally protected interest in his continued employment.

### b.    Grelle's Alleged Reputational Harm.

The crux of the parties' dispute is whether, as a result of OPM's Email and Musk's statements on X, Grelle suffers reputational harm sufficient to give rise to a concrete intangible injury.  FAC ¶ 6, at 4, ¶ 9, at 5, ¶ 4, at 10; Response at 3.  Grelle contends the "reputational harm" includes "stigmatic labeling" for fear of being labeled as "noncompliant" and "disloyal." Response at 4.  He further asserts that employees who have expressed reservations or even hesitated their compliance with the OPM Email have suffered "substantial reputational harm." Response at 3.  The Defendants counter that a reputational injury cannot confer standing if it is "too vague and unsubstantiated," and Grelle does not point to any injury to his reputation or to the reputation of others.  Reply at 7.

Generally, injury to one's reputation can be a cognizable injury in fact to confer standing to bring suit.  See Meese v. Keene, 481 U.S. 465, 473-75 (1987)(holding that plaintiff senator has standing to challenge the government's labeling as "political propaganda" certain films he wished to show, because this label "would substantially harm his chances for reelection and would adversely affect his reputation in the community"); Butler v. Biocore Med. Techs., Inc., 348 F.3d 1163, 1168 (10th Cir. 2003)(holding that damage to attorney's professional reputation is sufficient to confer standing to challenge an order finding he committed ethical misconduct).  "At some point . . . claims of reputational injury can be too vague and unsubstantiated" to confer standing. McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of the Jud. Conf. of the U.S., 264 F.3d 52, 57 (D.C. Cir. 2001).

The common-law analogue to reputational harm is the common-law tort of defamation. Defamation remedies reputational harm occurring from "a defamatory statement 'that would

subject [a person] to hatred, contempt, or ridicule' [being] published to a third party.'" TransUnion LLC, 594 U.S. at 432 (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 13 (1990)); see Lupia, 8 F.4th at 1192 (describing publication as required element of defamation). Thus, to rise to the level of the reputational harm that a defamation claim may remedy, those false statements must be defamatory and identify an individual, and the defendant must publish the false statement. A statement is defamatory when it impairs the plaintiff's reputation -- for example, a statement that impairs the plaintiff's reputation for trustworthiness, such as he "was reprimanded for stealing." RESTATEMENT (SECOND) OF TORTS § 569 cmt. g (A.L.I. 1977). Publication requires that the statement be communicated to a third party. See RESTATEMENT (SECOND) OF TORTS § 577 cmt. b (A.L.I. 1977)(clarifying that "defamation primarily protects only the interest in reputation," which cannot be injured "unless the defamatory matter is communicated to a third person"). The third party must understand the defamatory nature of the communication. RESTATEMENT (SECOND) OF TORTS § 563 cmts. b, c (A.L.I. 1977). Thus, to confer standing, the harm need not be "an exact duplicate" of the common-law analogue. Grelle thus can establish standing if he shows: (i) that the Defendants' statements are defamatory; and (ii) that the Defendants publish those statements to a third party. Grelle does not make that showing.

Here, the extrinsic evidence contradicts Grelle's allegations in the FAC that the Defendants label Grelle or any other employee as "noncompliant," "disloyal," or that the Defendants threaten Grelle or other employees with "stigmatic labeling." The Defendants' communications do not identify Grelle or any other federal employee by name. See generally February 24, 2025, Memorandum at 1; Declaration Exhibit A at 1; Declaration Exhibit E at 1. The communications do not state that the Defendants label any employee as "noncompliant" or "disloyal" if they express any reservations or fail to respond to the OPM Email. See generally February 24, 2025, Memorandum at 1; Declaration Exhibit A at 1; Declaration Exhibit E at 1. The facts shown by

Defendants' exhibits demonstrate that the communications do not include false statements about any employee, including Grelle. Assuming, however, that Grelle is exercising third-party standing on behalf of his fellow federal employees, he has not alleged facts showing how the Defendants' statements harmed the employees' standing in the community and/or workforce. The FAC does not allege, for example, that the Defendants' statements identify employees who fail to comply with OPM's Email or speaks out against it. In short, Grelle has not alleged facts sufficient for the Court to reasonably infer that the Defendants' statements harm Grelle's reputation. Without such specific concrete factual allegations, Grelle does not failed allege adequately that he suffers reputational harm sufficient to comprise an concrete and particularized injury in fact. See Turaani v. Wray, 988 F.3d 313, 317-18 (6th Cir. 2021)("Generalized allegations of reputational harm are not enough without alleging 'specific, concrete facts' showing a 'demonstrable injury.'")(quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)).

The Court further concludes that Grelle's reliance on Meese, 481 U.S. 465, is not sound. Grelle asserts Meese is analogous, because, just like the plaintiff in Meese, he takes affirmative steps to alter his behavior and yet still suffers harm to his professional reputation and interference with his duties. See Response at 3-4. In Meese, the Supreme Court finds standing, because the plaintiff shows more than a subjective fear of future stigma: his uncontradicted affidavits establish that, if he exhibits films that the government officially labels as "political propaganda," the government substantially is harming his reelection prospects and reputation in the community. 481 U.S. at 473-74. The Supreme Court also emphasizes that the plaintiff forces a "Hobson's choice" -- either refrain from speaking in a particular manner or proceed and incur the reputation risk that the government's actual label creates. 481 U.S. at 475. The Supreme Court further concludes that the plaintiff's need to take affirmative steps to counteract a negative label, one that already had been applied to the plaintiff, is itself a cognizable injury. 481 U.S. at 475.

Contrary to Grelle's arguments, the Meese theory of reputational harm is not applicable in the circumstances here. The FAC does not allege any governmental action that results in direct reputational harm to Grelle. See e.g., Foretich v. United States, 351 F.3d 1198, 1213 (D.C. Cir. 2013)(statute challenging as bill of attainder that "effectively brand[s] [the plaintiff] a child abuser and an unfit parent"); McBryde, 264 F.3d at 57 (involving Judicial Council's public and official characterization of district judge as having "engaged for a number of years in a pattern of abusive behavior"); Rangel v. Boehner, 20 F. Supp. 3d 148, 160 (D.D.C. 2013)(censure of House member in permanent House records). Nor does Grelle allege in the FAC any imminent reputational injury -- defamatory statement about Grelle communicated to third party -- tied to an official government characterization that immediately attaches to Grelle's contemplated conduct and/or employment status. Indeed, the FAC is void of any specificity of actual tangible harm to his reputation that Grelle has or will suffer. See Floyd v. City of N.Y., 302 F.R.D. 69, 119 (S.D.N.Y. 2014)(noting that the "reputational harm in each of these cases [recognizing an injury in fact] was asserted with some specificity"); Foretich, 351 F.3d at 1211 (involving affidavits averring that plaintiff suffers "harassment by the media, estrangement from his neighbors, and loss of business and professional opportunities"); Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 646 (2d Cir. 1998)(deeming allegations that "the exclusion of and related hostility toward ILGO have divided and isolated ILGO from the rest of the Irish community" sufficient). Grelle's allegation of reputational injury is thus not concrete or particularized, and is too abstract and speculative to satisfy Article III's standing requirements.

     **c.**  **Grelle's Alleged Emotional Distress and Severe Professional Anxiety.**

Grelle alleges he suffers "anxiety" and "severe emotional distress" as a result of the Defendants' communications. FAC ¶¶ 5, 6, at 4; Response at 3 (alleging "severe professional

anxiety"). The Defendants counter that Grelle's bare assertions of emotional distress stemming from "severe professional anxiety" is insufficient to establish an injury in fact. Reply at 7-8. The Court agrees with the Defendants.

As an initial matter, other than the allegation that he "faces irreparable harm, including severe emotional distress" and suffers "severe professional anxiety," Grelle pleads no facts supporting these conclusory statements. See Garland v. Orlans, PC, 999 F.3d 432, 439-40 (6th Cir. 2021)(noting that allegations of emotional harm generally are actionable only where they are extreme). It is well established that emotional injuries alone are not sufficient to confer Article III standing. See Cooper v. U.S. Dominion, Inc., No. 22-1361, 2023 U.S. App. LEXIS 32883, * 11, 2023 WL 8613526, at *5 (10th Cir. Dec. 13, 2023)("[P]laintiffs' asserted confusion and emotional distress is insufficient to establish an injury for Article III standing."). For emotional distress or anxiety to confer standing the plaintiff also must allege imminent threat of future harm. As the Court addresses below, Grelle does not allege a cognizable future impending harm. The Court thus concludes that Grelle's bare bones allegations of emotional distress and anxiety are insufficient to confer standing, because they are not concrete nor particularized.[3] See Garland, 999 F.3d at 440 ("Garland's anxiety is too speculative to qualify as an injury in fact because it is merely a fear of a future harm that is not 'certainly impending' -- an injury insufficient under Supreme Court precedent.")(quoting Clapper, 568 U.S. at 410).

> **d.        Defendants' Alleged Interference with Grelle's Official Duties.**

Grelle alleges that the Defendants' actions "eroded his supervisory authority." FAC ¶ 9, at

---

[3] Grelle does not offer any analysis why his allegations of emotional distress and anxiety have created standing. Rather, he asserts that the record shows real and present harm as "colleagues question who might be labeled disloyal next." Response at 33. Notably, Grelle's FAC, response, and surreply lack uncontradicted evidence that he or any federal employee was "labeled disloyal" or "noncompliant." See generally FAC; Response; Surreply.

5, ¶ 4, at 10.  Moreover, he alleges that he has "experienced a direct loss of control over employee performance evaluations, which are now dictated by externally imposed criteria rather than internally developed agency standards. This shift has altered professional dynamics within his agency and diminished [his] ability to manage and assess employee performance effectively." FAC ¶ 4, at 9-10.  The FAC further states that Defendants' communications "disrupt agency workflow, contribute to an environment of operational instability. . . . [The Defendants'] statements have had a chilling effect on the workforce . . . by instilling fear and uncertainty that further harm [Grelle's] professional reputation, employment stability, and authority as a supervisor."  FAC ¶ 4, at 10.  In his response, Grelle summarily contends that he suffers "interference with his official duties as a result of Defendants' coercive communications."  Response at 3.

Grelle's bare assertions are neither concrete nor particularized.  How the Defendants' communications interfere with Grelle's authority or ability to manage and assess employee performance.  The allegations do not explain what way the Defendants' statements preclude Grelle from conducting his job.  What Grelle intends to do as a supervisor, but is unable to do, because of the Defendants' statements.  The FAC does not answer these questions.  Grelle does not allege that he suffers some actual or threatened injury to his supervisory position, or to his general employment with the DoD.  Indeed, the Secretary of Defense's March 2 and 3, 2025, emails, directs DoD employees to cc' their supervisors and submit five bullets on their previous week's achievements . . . ."  Declaration Exhibit C; Declaration Exhibit D.  It follows that Grelle, as a supervisor, would be cc'd on his subordinates' email responses to the DoD.  To that end, by being cc'd on the communications, Grelle will have direct insight into his subordinates' performance, thus allowing him to manage effectively his subordinates.  Grelle has not proffered any uncontradicted evidence showing that his supervisory role was diminished in any form.  Again, the FAC does not explain how Defendants' communications interfered with Plaintiff's day-to-day

operations in any real way. Grelle's generalized statement of injury is nothing more than conjecture and, therefore, does not entitle him to Article III standing.

### e.    The Alleged Chilling Effect Resulting in Grelle's Altered Behavior.

Grelle asserts that the Defendants' statements result in a "chilling effect," because the coercion to be compliant causes "fear and uncertainty that further harm [Grelle's] professional reputation, employment stability, and authority as a supervisor." FAC ¶¶ 4-5, at 10-11.  Grelle also alleges that the "Defendants' coercive actions chill federal employees from performing their duties without fear, inflicting irreparable harm that warrants prompt judicial intervention."  FAC ¶ 5, at 10-11.  Citing Meese and Ostergren v. Cuccinelli, 615 F.3d 263, 272-73 (4th Cir. 2010), he asserts that the chilling-effect doctrine establishes a constitutional injury occurs even if no adverse employment actions are taken. See Response at 3.  In particular, the Defendants' actions "deterred Plaintiff from engaging in normal protected activities -- such as seeking workplace accommodations or reporting concerns" for fear that those "actions would be interpreted as noncompliance or disloyalty."  See Response at 4.  Finally, Grelle alleges that Defendants' past coercion continues to alter Grelle's conduct, and create fear and uncertainty.  See Response at 4.

The Defendants counter that the FAC does not demonstrate how he "altered his behavior" and what "extraordinary means" he took in response to the Defendants' conduct.  Reply at 8-9. Even if Grelle alters his behavior based on potential future events, such self-inflicted harm is not sufficient to confer standing when the future harm is speculative.  Reply at 9.  Grelle thus does not show how he is affected adversely, and, as a direct result, does not have standing to bring the lawsuit on his behalf or on behalf of other civilian federal employees.  Reply at 8-9.

Merely alleging that a regulation or policy creates a chilling effect is not sufficient to give standing.  Gessler, 770 F.3d at 900 (citing Clapper, 568 U.S. at 419 (stating that the Supreme Court

never has held that "plaintiffs can establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part")).   "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Gessler, 770 F.3d at 912 (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)).

Here, Grelle relies almost exclusively on Meese v. Keene, 481 U.S. 465 (1987) and Ostergren v. Cuccinelli, 615 F.3d 263 (4th Cir. 2010), to assert the applicability of the chilling effect doctrine.   Grelle's reliance is not sound.   Meese and Ostergren involve Frist Amendment challenges.   Standing requirements in a First Amendment case are different from standing requirements involving other Constitutional and statutory challenges.   In First Amendment cases, the standard is relaxed.   A plaintiff who alleges a "chilling effect" may meet Article III jurisdictional requirements because the chilling effect itself is a First Amendment injury.   Smith v. United States Court of Appeals, 484 F.3d 1281, 1285 (10th Cir. 2007)("Broadrick recognized an exception to the traditional standing requirement of injury personal to the litigant when the litigant challenges a 'statute[] attempting to restrict or burden the exercise of First Amendment rights,' permitting in those circumstances the assertion of a chilling effect on others' constitutionally protected speech to serve as a redressable injury.").   Such an analysis is inapplicable to this matter, as Grelle does not allege a First Amendment challenge based on the Defendants' statements. Moreover, the Court sees no support for applying these requirements outside a First Amendment challenge.   See Doctor John's, Inc. v. City of Roy, 465 F.3d 1150 (10th Cir. 2006)("An injury in fact does not automatically occur by '[t]he mere presence on the statute books of an unconstitutional statute . . . , even if [plaintiffs] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute.'")(citing Winsness v. Yocum, 433 F.3d 727, 732 (10th Cir. 2006)).   Grelle presents no case law finding standing because of a chilling effect outside of

the free-speech framework.    Absent a showing of controlling precedent extending First

Amendment standing analysis to circumstances similar to those in this matter, the Court concludes

that Grelle's chilling effect contention does not establish an injury in fact.

### f.        Defendants' Coercion and Adverse Employment Actions.

Grelle also alleges that he suffers a cognizable injury, because the Defendants' coercive

conduct -- requiring a response to the OPM Email -- compels him to alter his behavior to avoid a

present and future adverse employment action.[4]    FAC ¶ 2, 8 (Count II)(that coercive conduct

equites to constructive discharge in violation of due process, because of lack of notice and

opportunity to respond to termination); id. ¶¶ 2, 4, at 9-10 (coercion demands compliance in

violation of Constitutional protections); id. ¶ 6, at 11 (5 U.S.C. § 2302(b) prohibits coercion in

federal employment decisions).  See also Response at 5-6.  In particular, he asserts that, as a direct

result of Musk's February 23, 2025, post, and potential agency reorganization and RIF, he refrains

"from engaging in normal protected activities -- such as seeking workplace accommodations or

reporting concerns" for fear that those "actions would be interpreted as noncompliance or

---

[4] Grelle raises in his response, for the first time, a claim for past coercion in violation of his due process rights.  See Response at 4 (alleging effects of past coercion establish injury in fact). The Defendants counter Grelle's reliance on Paul v. Davis, 424 U.S. 693 (1976), and Wisconsin v. Constantineau, 400 U.S. 433 (1971), is not sound, because they do not address standing and, in each case, the plaintiff seeks damages and injunctive relief.  Response at 11.  Grelle does not address the Defendants' contention in the Surreply.

The Court's Local Rules provide that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ 7.1(b).  Implicit in that rule is that the failure to respond to an argument in a motion constitutes consent to grant the motion to the extent of that particular argument. Furthermore, under Tenth Circuit law, failing to respond constitutes waiver.  See, e.g., Cole v. New Mexico, 58 F. App'x 825, 829 (10th Cir. Feb. 6, 2003)(unpublished)(respondent waives argument when the respondent does not rais the response in initial response to motion to dismiss); Hinsdale v. City of Liberal, Kan., 19 F. App'x 749, 768 (10th Cir. Aug. 28, 2001)(unpublished)(plaintiff abandons claim when the plaintiff fails to respond to arguments made in support of summary judgment).  Accordingly the Court concludes that Grelle consents to granting the Motion on his claim of past coercion.

disloyalty." Response at 4. The Defendants' purported coercion also alters his conduct, and creates fear and uncertainty into the future. See Response at 4. Moreover, Grelle alleges that he "has been forced to reconsider his employment options and adjust financial decisions in anticipation of potential job loss." FAC ¶ 5, at 4. He thus alleges that Musk's post is improper and coercive employment threats that impede on Grelle's and his coworker's due process rights, because it equates to a constructive discharge without notice and an opportunity to be heard. See FAC ¶ 2, at 4.

The Defendants counter that Grelle's allegations of altered behavior are conclusory and self-inflicted, neither of which meet the standard for injury in fact. See Reply at 8, 10. Moreover, the Defendants' communications do not demand that Grelle take "extraordinary measures" or alter his conduct, other than submitting a five-point bullet email recapping Grelle's accomplishments from the prior week. See Reply at 8, 10. They further assert that Grelle's purported harm of potential adverse employment actions, including termination, is not concrete and too speculative to be "certainly impending." Motion at 9-10; see Reply at 3-4. They point to a sequence of hypotheticals that must occur before Grelle possibly can receive an adverse employment action: (i) Grelle must not respond to the OPM Email; (ii) the Defendants must take diligent steps to determine if Grelle complies with the OPM Email; and (iii) Defendants must then terminate his employment. Motion at 9-10. The Defendants argue that the sequence of events never will come to fruition for several reasons. Motion at 10; see Reply at 6.

The Court first addresses Grelle's assertion in the FAC that coercion in federal employment decisions is a Constitutional violation that establishes irreparable harm. See Motion at 10; see Reply at 6. Grelle cites Speiser v. Randall, 377 U.S. 513 (1958)("Speiser") and Rutan v. Republican Party of Ill., 497 U.S. 62 (1990)("Rutan"). While Speiser and Rutan address coercion and constitutional rights, they are inapplicable here.

- 25 -

In Speiser, the plaintiffs must subscribe to an oath that they do not advocate to overthrow the Federal or State Government as a condition to receive a tax exemption. See 357 U.S. at 514. The plaintiffs contend that such coerced conduct denies their freedom of speech without the procedural safeguards which the Fourteenth Amendment requires. See 357 U.S. at 514. The Supreme Court holds that the State's mandate that taxpayers execute an oath as a condition for obtaining a tax exemption erroneously places the burden of proof on the plaintiffs in violation of the requirements of due process. See 357 U.S. at 529. Due process requires the State to investigate whether the taxpayers entitled to the exemption. See 357 U.S. at 529. By placing the burden on the taxpayers, the State inevitably results in suppressing the plaintiffs' protected speech. See 357 U.S. at 529.

Similarly, in Rutan, the plaintiffs allege the Governor is using the hiring freeze as a political patronage system. See 497 U.S. at 64-66. Instead of making public-employment decisions based on merit, the State determines who to hire, promote, transfer, or recall after layoffs based on the employees' political party affiliation. See 497 U.S. at 66-67. The Supreme Court holds that the First Amendment prohibits the government from making public employment decisions for low-level, nonpolicy making jobs based on party affiliation or political support. See 497 U.S. at 78. In other words, the State cannot use public employment as leverage to force political loyalty, campaign work, party support, or silence. See 497 U.S. at 78.

Neither Speiser nor Rutan address standing. A reading of the cases, however, evidence that the plaintiffs incur concrete and particularized injuries. In Speiser, the plaintiffs suffered a monetary tangible injury by demonstrating their refusal to comply with the State's regulation results in the financial loss of a tax exemption. Likewise, in Rutan, the plaintiffs -- if the defendant challenges standing -- can assert tangible and intangible injuries. The tangible injuries pertain to the concrete economic harms that the plaintiffs allege: denial of hiring, promotion, transfer to a

more desirable position/location, recall after layoff.  The intangible injuries are unconstitutional coercion of political belief and association.  To put it another way, Rutan treats as a concrete injury the burden on freedom of belief and association that conditioning continued government employment based on political loyalty.  Speiser and Rutan are thus inapposite to the matter before the Court, because, here, Grelle does not allege the actual denial of specific benefits and opportunities.

The Court turns next to whether the purported intangible harm is sufficiently concrete and particularized to confer standing.  Here, Grelle alleges that Defendants violate several federal statues, including the Administrative Procedure Act, 5 U.S.C. § 706, and statutes governing federal agencies' control over personnel decisions, including work assignments, policies, and adverse actions. See FAC.  A statutory violation by itself, however, does not create an injury.  See Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 48 F.4th 1236, 1242 (11th Cir. 2022)(en banc)("A bare statutory violation is not enough, no matter how beneficial we may think the statute to be."). Thus, even if Congress says conduct is unlawful, the court must look for a traditional analogue to determine whether it is harmful. Specifically, the court must "look to both history and to the judgment of Congress."  Lupia, 8 F.4th at 119.  See Laufer v. Looper, 22 F.4th 871, 876-77 (10th Cir. 2022).  First, the court's inquiry into history "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." TransUnion LLC, 594 U.S. at 424. Second, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important."  Spokeo, 578 U.S. at 341. Applicable here are traditional harms that include "harms specified by the Constitution itself." TransUnion LLC, 594 U.S. at 425.  Such injuries include infringements on free speech or exercise of religion.  See Spokeo, 578 U.S. at 340 (citing Pleasant Grove City v. Summum, 555 U.S. 460 (2009), and Church of the Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520 (1993)).

Grelle's standing theory seeks to compare the threat of a potential adverse employment action to the traditional Constitutional harm of the denial of procedural due process.  Specifically, Grelle argues that the Defendants' coercive actions bear a close relationship to the traditionally recognized harm of the denial of pre-deprivation notice and an opportunity to be heard.  The Defendants do not dispute that a public employee who has "a constitutionally protected property interest in his employment" must receive "some kind of hearing" before the government fires the employee.  Loudermill, 470 U.S. at 542.  Indeed, deprivation of property is a violation of personal rights that may constitute an Article III injury in fact.  See TransUnion LLC, 594 U.S. at 427; Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 800 (5th Cir. 2012).  The issue that Grelle faces in pleading a sufficient concrete injury in fact is whether the potential constructive discharge deprives Grelle of property.

For purposes of the injury-in-fact requirement, it is not enough that Grelle has a property interest in his continued employment or notice relating to adverse employment actions.  Grelle must suffer some injury to his property interest.  See TransUnion LLC, 594 U.S. at 427 (explaining that hypothetical lawsuit alleging that factory's pollution damages plaintiff's property "may of course proceed in federal court because the plaintiff has suffered concrete harm to her property"); Servicios Azucareros de Venezuela, C.A., 702 F.3d at 800 (emphasis added)("Injuries to rights recognized at common law -- property, contracts, and torts -- have always been sufficient for standing purposes.").  This requirement is most commonly met by the termination of the public employee's employment, or the failure to provide due process for said termination.  See e.g., Collins v. Wolfson, 498 F.2d 1100, 1104 (5th Cir. 1974)("We accordingly fail to discern from the complaint that these instructors have suffered any injury in fact, since they continue in their respective posts[.]").

Grelle's claim in this case does not parallel closely with the procedural due process rights

of federal employees.  The United States has not terminated Grelle's employment.  Undeniably, he does not suffer any adverse employment action in relation to the OPM Email.  Response at 6.  Nor does he allege any federal employee is subject to an adverse employment action for failure to comply with the OPM Email.  See generally FAC; see generally Response; see generally Surreply. He also concedes that Musk has no authority to reprimand or remove federal personnel.  See Response at 5.  Moreover, OPM and the DoD repeatedly reiterate that only the DoD has the authority to make personnel decisions.  Specifically, the DoD directs Grelle, and all other civilian employees, to refrain from responding to the OPM Email, and that the "Department of Defense is responsible for reviewing the performance of its personnel and it will conduct any review in accordance with its own procedures."  Declaration Exhibit A.  Likewise, OPM confirms via email that each agency is responsible for reviewing performance of that agency's personnel.  February 24, 2025, Memorandum at 1.  Further, only the employee's agency determines any consequences for failure to respond.  February 24, 2025, Memorandum at 1.  Grelle also admits that he reports his activities to his employing agency -- not to the Defendants -- thereby negating the possibility of a voluntary resignation or any adverse employment action for failure to respond.  See Motion at 10.  See also Reply at 6.

In light of the foregoing, the Court concludes that Grelle's risk of potential adverse employment actions under the alleged facts is speculative.  He does not suffer any adverse employment action.  The alleged coercion's actors lack any authority to enforce any adverse employment action.  The DoD and OPM clarifies that only Grelle's federal agency has the sole authority to oversee personnel decisions.  The DoD does not state that it will take any adverse employment actions against employees who fail to comply with the OPM Email or the DoD's email.  Accordingly, the consequence of an adverse employment action is speculative and abstract. Thus, Grelle's injury allegation of potential future adverse employment action is speculative and

does not identify a "real" concrete injury in fact.[5]

Even if the Court finds Grelle alleges a concrete and particularized injury, he does not demonstrate an actual, imminent, or impeding harm. Standing requires not only a concrete and particularized injury, but an "actual or imminent, and not 'conjectural' or 'hypothetical'" one. Lujan, 504 U.S. at 560. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." Whitmore, 495 U.S. at 158. "An Article III injury . . . must be more than a possibility. . . . The threat of injury must be both real and immediate." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1155 (10th Cir. 2005) (quoting Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1282 (10th Cir. 2002). "A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." Tandy v. City of Wichita, 380 F.3d 1277, 1283-84 (10th Cir. 2004). "But '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (quoting Pa. v. W. Va., 262 U.S. 553, 593 (1923)).

Here, Grelle's alleged injury is not sufficiently imminent. Grelle alleges that Defendants could, in the future, enforce an adverse employment action for failure to comply with the OPM Email. This assertion, however, requires the Court to make several leaps in reasoning to find imminence. As Defendants' notes, a plaintiff must satisfy a series of hypotheticals before any adverse employment actions take place. Based on the record before the Court, the speculative chain of events that must occur before any adverse action might be taken will not materialize. For instance, Grelle concedes that he does not respond to the OPM Email, because the DoD directs its

---

[5] The Court also concludes that Grelle waives any argument that the future harm is not speculative, because he does not respond to the Defendants' arguments. Reply at 6. See also D.N.M.LR-Civ 7.1(b); Cole, 58 F. App'x at 829; Hinsdale, 19 F. App'x at 768.

employees to refrain from responding.  Instead, he responds to the DoD's subsequent emails requesting employees highlight accomplishments from the prior week.  Next, Grelle does not assert any factual allegations that the Defendants took any diligent steps to determine if Grelle complies with the DoD email.  Rather, as Grelle acknowledges, the DoD states it is solely responsible for all personnel decisions.  Notably, however, the DoD does not state expressly or implicitly, that failure to respond results in adverse employment actions.  Nor do the Defendants or the DoD state or imply that the personnel will not be afforded their procedural due process rights, such as written notice of charges pertaining to adverse employment actions, opportunity to respond, and a final written decision.

Finally, as the Court addresses above, the Court concludes that Grelle's alleged altered conduct and "extreme measures" are insufficient to establish an injury in fact.  Grelle may not "manufacture standing merely by inflicting harm on [himself] based on [his fear] of hypothetical future harm that is not certainly impending."  Clapper, 568 U.S. at 416.  See Murthy v. Mo., 603 U.S. 43, 73 (2024).  Having concluded that Grelle does not allege a credible threat or coercion of enforcement, the Court logically does not reach the conclusion that Grelle's actions based on those fears add up to an injury in fact. The alleged existing harm that Plaintiff describes amounts to an anticipation of attenuated action to manufacture damages.  To hold otherwise creates an incentive structure that encourages self-harm to establish standing.  See Clapper, 568 U.S. at 416.

For all the foregoing reasons, the Court concludes that Grelle does not allege an actual or imminent injury that is concreate for any of his five counts.  Accordingly, the Court concludes, as a threshold matter, that Grelle lacks standing on all counts and therefore the Court lacks subject-matter jurisdiction.  As this issue is dispositive as to Grelle' claims, the Court need not address the additional arguments in the parties' briefing, and the Court dismisses this action.

## II.     THE COURT DISMISSES THE CASE WITHOUT PREJUDICE.

Because the Court is dismissing all of Grelle's claims against the Defendants under rule 12(b)(1) for lack of jurisdiction, in the Tenth Circuit, the dismissal is without prejudice. See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir. 2006). See also Fed. R. Civ. P. 41(b) (specifically excluding dismissals for "lack of jurisdiction"). A dismissal for lack of jurisdiction "is not an adjudication of the merits and therefore . . . must be without prejudice." Martinez v. Richardson, 472 F.2d 1121, 1126 (10th Cir. 1973). Because standing is a jurisdictional issue, "dismissal with prejudice for lack of standing is inappropriate." Brereton, 434 F.3d at 1216.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment, filed May 9, 2025 (Doc. 28), is granted; (ii) the Plaintiff's Complaint, filed February 24, 2025 (Doc. 1), is dismissed without prejudice; (iii) all other pending motions are denied as moot; and (iv) this case is closed.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Peter Grelle
Las Cruces, New Mexico
Plaintiff Pro Se